Myron A. **POWELL**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49S00–0009–CR–562.

Supreme Court of Indiana.

June 18, 2002.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

A jury convicted Indianapolis police officer Myron Powell of felony murder for his role in the attempted robbery and shooting death of a suspected drug dealer. The trial court sentenced him to sixty-five years imprisonment. In this direct appeal, Powell raises four issues for our review, which we rephrase as follows: (1) is Powell's conviction for felony murder inconsistent with his acquittal for robbery; (2) did the trial court err in refusing Powell's tendered instruction on accomplice liability; (3) did the trial court err in sentencing Powell; and (4) is Powell's sentence manifestly unreasonable. We affirm.

### Facts

The facts most favorable to the verdict show that in the evening hours of December 11, 1997, David Hairston was present at his home in Indianapolis. Also present were twenty-year-old Khalalah and fifteen-year-old Michael. When the doorbell rang, Khalalah answered and observed two men, one of whom was wearing a police uniform. She also observed an Indianapolis Police Department patrol car parked in front of the house. The man wearing the uniform asked to speak with "Big C," which was Hairston's nickname. Khalalah shut the door, leaving the men outside, and yelled to Hairston that the police wanted to talk to him. In the meantime, the two men entered the house and waited in the foyer. Hairston came to the door and inquired, "What's the problem, Officers?" R. at 1373. The man in the uniform responded, "We just busted one of your friends and [he] said you had a lot of drugs over here." R. at 1374. When Hairston asked to see a search warrant, the uniformed officer replied that additional police officers were en route to the house with the document. Hairston then told the pair to wait outside until the other officers arrived. However, the two men refused to leave. Hairston then demanded their names and badge numbers. The officer in uniform stated that his name was "Thompson." Suspecting something was amiss, Hairston brushed aside the officer's coat and saw a nametag that read "Powell." R. at 1291.

At that point, the second man, later identified as Michael Highbaugh, produced a handgun, placed the barrel against Hairston's temple, and ordered him to lie on the floor. Hairston refused, and Highbaugh shot him once in the head. He died as a result. In the meantime, Khalalah

and Michael had run from the foyer into the kitchen. Highbaugh shot Michael in the head as he was trying to exit through a kitchen window. The resulting wound was not fatal, and Michael lay motionless pretending to be dead. Highbaugh then placed the barrel of the gun against Khalalah's head and pulled the trigger. When it misfired, he grabbed a knife and stabbed her several times in the neck. She survived and identified Powell as the man in the uniform.

From his position on the kitchen floor, Michael heard footsteps running throughout the house. After several minutes, he saw Powell rushing out the front door carrying three bags, one of which appeared to contain marijuana. When Powell and Highbaugh were finally gone, Michael locked the door and called the police. Officers from the Indianapolis Police Department arrived and observed a large safe that had been moved from Hairston's bedroom closet to the front porch. It contained $75,000 in cash, a semi-automatic handgun, jewelry, and a $5000 Certificate of Deposit. Officers also recovered from the house a scale used to weigh narcotics, $22,000 in cash, and a large quantity of cocaine and marijuana.

The State charged Powell with murder, felony murder, two counts of attempted murder, and robbery. The State also sought the death penalty but later amended its complaint and sought life imprisonment without parole.[1] After a jury trial, Powell was convicted of felony murder and acquitted of the remaining charges. The trial court sentenced Powell to sixty-five years imprisonment. This appeal followed.

*Discussion*

I.

Because the jury found Powell guilty of felony murder but acquitted him of robbery, Powell argues these verdicts are inconsistent because robbery was "the only . . . underlying felony used to support his felony murder conviction." Br. of Appellant at 8. Therefore, the argument continues, this Court should reverse his felony murder conviction.

■ When this Court reviews a claim of inconsistent jury verdicts, "we will take corrective action only when the verdicts are extremely contradictory and irreconcilable." *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000) (quotation omitted). A jury's verdict may be inconsistent or even illogical but nevertheless permissible if it is supported by sufficient evidence. *Totten v. State*, 486 N.E.2d 519, 522 (Ind. 1985); *see also Hodge v. State*, 688 N.E.2d 1246, 1248–49 (Ind.1997) (noting that ordinarily when the trial of a defendant results in acquittal on some charges and convictions on others, the verdicts will survive a claim of inconsistency when the evidence is sufficient to support the convictions). In resolving such a claim, we neither interpret nor speculate about the thought process or motivation of the jury in reaching its verdict. *Mitchell*, 726 N.E.2d at 1239.

■ Powell's argument is based on a faulty premise. Rather than relying solely on the commission of a robbery as the crime underlying the felony murder charge, the record shows the State relied on alternative theories, namely: robbery *or* attempted robbery.[2] Evidence that a

1. Highbaugh was charged separately with the same offenses. And as with Powell, the State also sought the death penalty and later amended its complaint to a request for life imprisonment without parole. Highbaugh pleaded guilty to murder and two counts of

attempted murder and was sentenced to life without parole. His direct appeal is pending before this Court.

2. The charging information provides in relevant part, "MYRON A. POWELL . . . did kill

locked safe in Hairston's home had been moved from the closet to the front porch was sufficient for the jury to conclude that Powell intended to rob Hairston but simply did not complete the job. Powell's conviction for felony murder with attempted robbery as the underlying felony is not inconsistent with his acquittal for robbery.

## II.

■ Powell tendered the following jury instruction on accomplice liability:

The criminal liability of an accomplice is negated by the principal's commission of an offense greater in severity than the offense originally planned if the resulting offense is not a probable and natural *consequence of the planned offense.*

R. at 969 (emphasis in original). The trial court refused to give Powell's tendered instruction and instead gave its own, which read in pertinent part:

A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime, even if the other person:

1. Has not been prosecuted for the offense

2. Has not been convicted of the offense; or

3. Has been acquitted of the offense.

To aid is to knowingly support, help, or assist in the commission of a crime.

In order to be held responsible for the actions of another, [a defendant] need only have knowledge that he is helping in the commission of the charged crime. He does not have to personally partici-

another human being, namely DAVID HAIRSTON, while committing or attempting to

pate in the crime nor does he have to be present when the crime is committed.

. . .

It must be proved beyond a reasonable doubt that a defendant had knowledge of and participated in the commission of the crime.

R. at 1004–05 (Instruction No. 10 B). Powell complains the trial court erred in refusing to give his proposed tendered instruction.

■ The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion. *Cline v. State,* 726 N.E.2d 1249, 1256 (Ind.2000). The test for reviewing the trial court's decision to refuse a tendered instruction is: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Id.* Although Powell contends otherwise, the substance of his instruction—accomplice liability—is contained in the instruction given by the trial court. We find no error on this issue.

■ In a related argument, Powell also complains the trial court erred in refusing to give his tendered instruction on accomplice liability after the jury sent a note to the trial court. The facts are these. In the late evening hours during the first day of deliberations, the jury sent two questions to the trial court. The one at issue here read as follows:

Could we have clarification in relationship to Instruction 10B? Does the sentence, ["]a person is responsible for the actions of another person when either

commit ROBBERY." R. at 89.

before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime, even if the other person ... ["] does this crime, underlined, have to be the exact crime that eventually was committed, robbery, murder?

R. at 1763–64. After discussing the matter with the parties outside the jury's presence, the trial court returned the jury to the courtroom, advised them that court would be adjourned for the day, and that the trial court would answer the jury's questions the following morning. The next day, over Powell's objection, the trial court responded, "The Court may not answer this question. You should reread your Jury Instructions." R. at 1791. In this appeal, Powell contends the trial court should have re-read all of the final instructions along with his previously rejected tendered instruction.[3]

Indiana Code section 34–36–1–6 provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the informa-

tion required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties. There is no dispute that the jury's question in this case concerned a point of law. Also there is no dispute that the trial court complied with the statutory mandate. Powell's complaint is that the trial court should have done more.

At the time of Powell's trial, the generally accepted procedures in answering a jury's question on a matter of law was to reread all instructions in order to avoid emphasizing any particular point and not qualify, modify, or explain its instructions in any way. *Wallace v. State*, 426 N.E.2d 34, 36 (Ind.1981); *see also Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind.1981) ("The path is extremely hazardous for the court that would depart from the body of final instructions and do other than reread the final instructions in responding to jury questions.").[4] However, we have permitted departure from this procedure. In *Riley v. State* we said " 'when the jury question coincides with an error or legal lacuna [gap] in the final instructions ... a response other than rereading from the body of final instructions is permissible.' " 711 N.E.2d 489, 493 (Ind.1999) (quoting *Jenkins*, 424 N.E.2d at 1003). In this case, Powell contends there was a gap in the trial court's final instructions that would have been cured by a reading of his

3. Although the record is not clear, apparently the trial court provided the jury with a set of final instructions to aid them during deliberations. Thus, rather than re-reading the instructions itself, the trial court directed the jury to do so. There was no error in that regard, and Powell makes no such claim. We take Powell's argument on appeal to mean that the trial court erred by not tendering his proposed instruction and directing the jury to read it along with the other final instructions.

4. With this Court's adoption of the Indiana Jury Rules, which become effective January 1, 2003, trial courts are afforded greater flexibil-

ity in responding to jury inquiries. Jury Rule 28 provides:

If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

tendered instruction. We disagree there was any gap. The trial court's instruction was thorough and more detailed than that proposed by Powell. As we have already determined, the substance of Powell's instruction was contained in the instruction given by the trial court. Further, reading Powell's instruction would not have provided the jury with any more guidance on the question raised. The court's instruction informed the jury, among other things, that it must find beyond a reasonable doubt that Powell had knowledge that Highbaugh intended to commit the "charged crime." Powell's proposed instruction stated the same proposition, but simply in the negative. We find no error here.

### III.

The trial court sentenced Powell to the maximum term of sixty-five years. Powell challenges his sentence contending the trial court considered an improper aggravator, failed to consider several mitigating factors, and failed to balance substantial mitigating factors against the aggravating factors. Generally, sentencing determinations rest within the trial court's discretion. *Bonds v. State,* 729 N.E.2d 1002, 1004 (Ind.2000). We review trial court sentencing decisions only for abuse of discretion, including a trial court's decision to increase the presumptive sentence because of aggravating circumstances. *Id.*

At sentencing the trial court identified as aggravating factors: (1) the nature and circumstances of the crime; and (2) the commission of a forcible felony while wearing a garment designed to resist the penetration of a bullet.[5] Powell complains there is no evidence in the record to support the second aggravator. The State counters that in his statement given to investigating officers, Powell testified that he was wearing a "full uniform" at the time of the crime. R. at 1532. The State also points to testimony that Powell was wearing a bulletproof vest when arrested the morning after the crime was committed.

The record shows that Powell was arrested during roll call at his precinct. That fact does not support the notion that he wore a bulletproof vest the night before. Also, although Powell testified that he was in "full uniform" at the crime scene, there is no evidence in the record that a full uniform includes a garment designed to resist the penetration of a bullet. Therefore, the use of this aggravator was inappropriate.[6]

The trial court found Powell's lack of criminal history as the sole mitigating factor. Powell complains the trial court erred in failing to consider as mitigating factors his military service, his "chronically abusive childhood," and that he was a good father to his children and step-children. Br. of Appellant at 20. The finding of mitigating circumstances is within the discretion of the trial court. *McCann v.*

---

5. *See* Ind.Code § 35–38–1–7.1(b)(7)

6. Powell also contends that the trial court "relied on false assumption when pronouncing sentence" because the trial court referred to him as a "robber." Br. of Appellant at 19. Powell complains this amounts to error because the jury acquitted him of robbery. Our review of the record shows that the trial court's reference to Powell as a "robber," as opposed to an "attempted robber," was inadvertent. In its sentencing statement, the trial court explained that Powell "attempt[ed] to make his own personal gain in drugs and money" and later referred to the crime as an "attempt[ed] robbery." R. at 1970–71. In any event, Powell has failed to establish that this reference was used as an aggravating factor.

*State*, 749 N.E.2d 1116, 1121 (Ind.2001). "An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* Further, the trial court is not obligated to accept the defendant's contention as to what constitutes a mitigating circumstance. *Id.*

The record shows that Powell was released from his second tour of duty in the United States Air Force with an "other than honorable discharge." R. at 1833. Apparently, he was accused of taking quarters from a slot machine and resigned rather than accept a reduction in rank. Even if Powell's record was exemplary to that point, the existence of an other than honorable discharge was a factor the trial court could properly consider in determining that his military record was entitled to no significant mitigating weight.

■■■ Concerning Powell's "chronically abusive childhood," the record shows that Powell's father had a drinking problem; his mother was hospitalized for psychiatric problems; his father-figure older brother was murdered; and he witnessed the stabbing death of another brother. A defendant's difficult childhood is not necessarily entitled to mitigating weight. *See, e.g., Loveless v. State*, 642 N.E.2d 974, 977 (Ind.1994) (no weight given where sixteen-year-old defendant had been molested by her father as an infant; witnessed father molest her sisters, cousin, and other young girls; witnessed her parents' multiple attempts to commit suicide; and witnessed her father attempting to kill her mother); *Page v. State*, 615 N.E.2d 894, 896 (Ind. 1993) (no weight given where nineteen-year-old defendant was addicted to alcohol and abused by both parents). In this case, the trial court was not obligated to consider Powell's family background as a mitigating circumstance. By being qualified to serve as a police officer and having served for a number of years, Powell apparently was able to overcome whatever adversity he might have experienced in his youth. There is no indication that Powell's childhood was relevant to his level of culpability, and the trial court properly ignored it. The same is true for Powell's claim that he was a good father to his children and stepchildren. We conclude the trial court properly determined the foregoing factors were entitled to no mitigating weight.

■■■ As for Powell's complaint that the trial court failed to balance substantial mitigating factors against the aggravating factors, as explained by the foregoing discussion, there was only one proper mitigating factor that the trial court found: lack of criminal history. Because the trial court improperly relied on the "committing a forcible felony while wearing a garment designed to resist the penetration of a bullet" aggravator, we are left with a single aggravator: the nature and circumstances of the crime. However, the manner and circumstances in which a crime is committed can be considered as an aggravating circumstance. *Georgopulos v. State*, 735 N.E.2d 1138, 1144 (Ind.2000). Also, a single aggravating circumstance is adequate to justify a sentence enhancement. *Hawkins v. State*, 748 N.E.2d 362, 363 (Ind.2001). In this case, identifying the nature and circumstances of Powell's crime, the trial court noted Powell's abuse of police power and breach of public trust; the fact that his acts not only resulted in a death but also severe injury to a young woman and a minor child; and that the crime was motivated by drugs and money. The trial court gave substantial aggravating weight to the nature and circumstances of Powell's crime finding them to be "[t]he main aggravating factor[s] in this

case." R. at 1970. This sole aggravating factor outweighs the single mitigating factor even though one of the aggravators was invalid.[7] *See, e.g., Walter v. State,* 727 N.E.2d 443, 447 (Ind.2000) ("Even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist.").

## IV.

 Finally, Powell contends his sentence is manifestly unreasonable and invites this Court to revise it to the presumptive term of fifty-five years. Although this Court is empowered to review and revise criminal sentences, we will not do so unless the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997). While on duty as a police officer, sworn to "protect and serve," Powell entered a house on the pretext of serving a search warrant. While present he participated in killing the resident and seriously injuring two innocent bystanders. And he did so for the sake of stealing drugs and money. We are not persuaded that a sixty-five year sentence for Powell's crime is manifestly unreasonable.

### *Conclusion*

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

**7.** This Court has held that the lack of criminal history should be given substantial mitigating weight. *See Loveless v. State,* 642 N.E.2d 974, 976 (Ind.1994). However, "that does not mean that lack of criminal history automatically outweighs any valid aggravating circumstance. Rather, it is a balancing test." *McCarthy v. State,* 749 N.E.2d 528, 539 (Ind. 2001).