Ronald J. LAMPITOK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0212–CR–626.

Court of Appeals of Indiana.

Nov. 16, 2004.

Rehearing Denied Jan. 14, 2005.

Michael B. Troemel, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

KIRSCH, Chief Judge.

Following a jury trial, Ronald J. Lampitok appeals his conviction for carjacking,[1] a Class B felony, raising the following restated issues:

I. Whether the State's manner of charging Lampitok with multiple charges stemming from one inci-

---

1. *See* IC 35–42–5–2.

dent deprived him of due process.

II Whether the prosecutor's comments in his opening statement constituted misconduct and prejudiced Lampitok.

III. Whether evidence that Lampitok and his nephew, Dominic Fuller, flagged down a motorist in a park, forced that driver to the backseat, and, after releasing the victim, drove the vehicle to Illinois was sufficient to support Lampitok's carjacking conviction.

IV. Whether the trial court erroneously limited Lampitok's cross-examination of the victim and deprived him of presenting his defense.

V. Whether the trial court erred when it admitted into evidence alleged hearsay testimony that Fuller instructed Lampitok's girlfriend to locate and dispose of a gun.

VI. Whether Lampitok was deprived of a fair trial because the trial judge either fell asleep or appeared to do so by having his eyes shut during a portion of defense counsel's closing argument.

VII. Whether the jury rendered inconsistent verdicts when it found Lampitok guilty of carjacking and Class C felony robbery, but acquitted him of kidnapping and criminal confinement.

VIII. Whether Lampitok's eighteen-year executed sentence for carjacking was inappropriate.

The State cross-appeals, claiming that it proved two prior unrelated felonies as defined by IC 35–50–2–8, and, therefore, the trial court erred when it granted Lampitok's motion for a directed verdict on the habitual offender charge.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the conviction are that during the afternoon of December 21, 2001, Lampitok and Fuller flagged down a vehicle driven by Jeremy Martin as he drove through a park in Lafayette, Indiana. Martin stopped, and Fuller asked Martin for a cigarette. Lampitok, armed with a gun, then told Martin that they "wanted [his] car too." *Appellant's Appendix* at 136. Lampitok and Fuller made a demand for money, but Martin told them he had none. They ordered him to the backseat of the vehicle. After looking in Martin's wallet, they made remarks to Martin that they knew where he lived and that he should not call the police. They told Martin that they would return the vehicle, which belonged to Martin's then-fiancée, to the park the next day. Eventually, they released Martin at a shopping plaza, giving him a couple of dollars to get home. Martin entered a fast food restaurant and telephoned his fiancée and the police to report the incident.

Meanwhile, Lampitok and Fuller drove to Sullivan, Illinois, where Lampitok's girlfriend, Jackie Claypool, had driven days earlier to be with her parents. Upon Martin's report, police began an investigation and, that same day, located Martin's vehicle, with Martin's wallet and jacket in it, "hung up" on a railroad tie in a trailer park in Sullivan. *Appellant's Appendix* at 239, 296. The police also found and arrested Lampitok as he spoke to Claypool in her parents' trailer.[2]

2. Police apprehended Fuller the next day.

The State charged Lampitok with four counts: (1) kidnapping, a Class A felony; (2) carjacking, a Class B felony; (3) robbery while armed with a deadly weapon, a Class B felony; and (4) criminal confinement, a Class B felony. The State later filed an habitual offender charge against Lampitok.

The jury found Lampitok guilty of carjacking and Class C felony robbery, a lesser-included offense of the armed robbery charge. At the habitual offender phase of trial, Lampitok moved for a directed verdict, alleging that one of the two prior unrelated felonies upon which the State relied to obtain the habitual offender finding was not eligible for consideration under IC 35-50-2-8, Indiana's habitual offender statute. IC 35-50-2-8(d)(3). The trial court agreed and granted Lampitok's motion for directed verdict on this charge. Subsequently, at the sentencing hearing, the trial court vacated Lampitok's robbery conviction under double jeopardy principles and sentenced him to eighteen years for the carjacking conviction.

On appeal, Lampitok claims trial error in a number of respects, and the State cross-appeals the trial court's directed verdict ruling on the habitual offender charge. Additional facts are supplied as necessary.

## DISCUSSION AND DECISION

### I. Charging Informations

The State charged Lampitok with kidnapping, carjacking, robbery with a deadly weapon, and criminal confinement based upon the December 21, 2001 incident. Relying on Article 1, Section 13 of the Indiana Constitution, which requires that an accused shall have the right to demand the nature and cause of the accusations against him, Lampitok asserts that he was denied due process because of "confusing, overlapping counts." *Appellant's Brief* at 15. We disagree.

It is well-established that when two criminal statutes "overlap" such that more than one statute appears to define the acts of a defendant, the State may prosecute under either statute so long as doing so does not discriminate against any class of defendants. *Kibbey v. State,* 733 N.E.2d 991, 996 (Ind.Ct.App.2000). The decisions whether to prosecute and what charges to file are within the prosecutor's discretion. *Id.*

The gist of Lampitok's claim appears to be that he was unable to discern "exactly what he allegedly did to constitute a crime." *Appellant's Appendix* at 15. Initially, we note that Lampitok has waived any challenge to the charging informations by failing to raise the issue to the trial court. *Buzzard v. State,* 712 N.E.2d 547, 551 (Ind.Ct.App.1999), *trans. denied* (any challenge to adequacy of an information must be made by a motion to dismiss prior to the arraignment, and failure to do so is waiver).

Regardless of waiver, Lampitok's claim fails. An information that enables an accused, the court, and the jury to determine the crime for which conviction is sought satisfies due process. *Grant v. State,* 623 N.E.2d 1090, 1093 (Ind.Ct.App. 1993), *trans. denied* (1994). Here, each of the four charges sets forth the specific facts and circumstances that support it. Furthermore, separate jury instructions defined each crime. Lampitok prepared and presented a defense, which the jury chose not to believe. We cannot say that the manner in which Lampitok was charged precluded him from knowing the nature of the charges he faced.

To the extent that Lampitok's argument suggests some form of double jeopardy violation, we reject it. Here, although

Lampitok was convicted of Class C felony robbery and carjacking, the trial court vacated the robbery conviction and sentenced Lampitok only on the carjacking conviction. Lampitok was not deprived of due process by the manner in which he was charged. *See, e.g., Smith v. State,* 770 N.E.2d 290, 297 (Ind.2002) (explaining in larceny context that State has unrestricted discretion to file alleged repetitive charges so long as defendant not convicted and sentenced more than once for same offense).

II. Prosecution's Opening Statement

■■ Lampitok asserts that at trial the prosecutor made inappropriate comments during his opening statement and that, consequently, he was denied a fair trial. When reviewing a charge of prosecutorial misconduct, we employ a two-step analysis. First, we consider whether the prosecutor engaged in misconduct, and, second, we consider all the circumstances of the case to determine whether such misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Ratliff v. State,* 741 N.E.2d 424, 428–29 (Ind.Ct.App.2000), *trans. denied* (2001). The latter is measured not by the degree of impropriety of the misconduct, but by the probable persuasive effect of the misconduct on the jury's decision and whether there were repeated examples of misconduct that would evince a deliberate attempt to unfairly prejudice the defendant. *Id.*

■ Lampitok challenges the prosecutor's opening remarks in three aspects. First, Lampitok alleges that the prosecutor improperly "referred to inadmissible hearsay" when the prosecutor referenced a telephone call that Fuller made to Claypool about "a gun." *Appellant's Brief* at 14; *Appellant's Appendix* at 112. Once the prosecutor mentioned the telephone call about a gun, defense counsel objected to the commentary as inadmissible hearsay. Although the prosecutor maintained it was not hearsay because the substance of Fuller's call to Claypool constituted a directive or a command to Claypool, the trial court sustained the objection "for opening statements," but noted, "we'll listen to the evidence and see just where we get to on that." *Appellant's Appendix* at 113. The prosecutor proceeded in his opening statement to explain to the jury what Claypool did after she spoke with Fuller, namely locate the gun near the area where the vehicle was found and throw it down a ravine.

When Claypool later testified during trial, the court permitted her, over Lampitok's hearsay objection, to recount a telephone call she received from Fuller, in which he instructed Claypool to find the gun and "get rid of it." *Id.* at 364–65. There followed further testimony concerning what Claypool did in response to Fuller's call, which was consistent with the prosecutor's opening comments. We discern no prosecutorial misconduct in this regard.

■ Second, Lampitok claims that the prosecutor improperly lectured the jury "in a professorial manner" regarding the hearsay rule and the four charges brought against Lampitok. *Appellant's Brief* at 14. Having reviewed the prosecutor's comments, we find that the prosecutor's remarks were correct statements of the law. As such, there was no prejudice resulting from these comments, much less grave peril.

■ Third, Lampitok claims that the prosecutor attempted to usurp the province of the jury by stating that he would "guarantee" the jurors that each would find the State had proven the charges beyond a reasonable doubt. *Appellant's Appendix* at 118. Here, the court's pre-

liminary instructions stated that the attorneys' opening statements are not evidence, that the jury has the right to decide the law and facts, and the jurors are the exclusive judges of the evidence. The final instructions stated likewise. Accordingly, the prosecutor's comment did not usurp the province of the jury, and we discern no misconduct.

### III. Sufficiency of the Evidence

█ Lampitok asserts that the evidence was insufficient to convict him of carjacking. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Armstead v. State,* 806 N.E.2d 872, 873 (Ind.Ct.App.2004), *trans. denied.* We consider only the evidence that is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.* We will affirm a conviction if the evidence and inferences establish that a trier of fact could reasonably conclude that the defendant was guilty beyond a reasonable doubt. *Sanders v. State,* 713 N.E.2d 918, 920 (Ind.Ct. App.1999).

To convict Lampitok of carjacking, the State was required to show beyond a reasonable doubt that Lampitok knowingly or intentionally took a motor vehicle from Martin by using or threatening the use of force or by putting any person in fear. IC 35–42–5–2.

The essence of Lampitok's sufficiency claim is that Martin's testimony was not credible. For instance, he challenges Martin's explanation for being at the park. Lampitok also suggests that "it makes no sense" that Lampitok and Fuller would agree to return the car the next day and would give Martin money if they were, in fact, robbing him. *Appellant's Brief* at 13.

He also maintains that it is "curious" that Martin's first telephone call was to his fiancée, rather than to the police. *Id.* In Lampitok's view, it was "readily apparent" that Martin lied when he testified that he did not know Lampitok. *Id.* However, it is certainly well-settled that we will not reweigh the credibility of witnesses. *See Armstead,* 806 N.E.2d at 873. As was its prerogative, the jury in this case simply chose to believe Martin over Lampitok, who contended that the two knew each other and that he had agreed to obtain drugs for Martin in exchange for use of Martin's vehicle. *See Marcum v. State,* 725 N.E.2d 852, 863 (Ind.2000) (jury's prerogative to weigh conflicting evidence).

Viewing the evidence most favorable to the verdict, we hold the evidence was sufficient to sustain Lampitok's carjacking conviction.

### IV. Limitation of Cross–Examination

Lampitok argues that the trial court improperly limited his cross-examination of Martin, which violated his constitutional right to confront Martin and handicapped his ability to present his defense that Martin agreed to loan the car in exchange for drugs.

█ Although an accused's right to confront and cross-examine witnesses is a fundamental right, it is subject to reasonable limitations placed at the discretion of the trial judge. *Marcum,* 725 N.E.2d at 860. Trial judges retain "wide latitude" to impose limits based on concerns about, among other things, confusion of the issues or to limit introduction of evidence that is only marginally relevant. *Id.*

█ Initially, we note that Lampitok offers little cogent argument on this issue and fails to cite to authority in support of his contention; thus, he has waived the issue for our consideration. Ind.App. Rule 46(A)(8)(a); *Doughty v. Review Bd. of*

*Dep't of Workforce Dev.,* 784 N.E.2d 524, 527 (Ind.Ct.App.2003); *Marcum,* 725 N.E.2d at 861. However, regardless of waiver, we are not persuaded that the court's rulings limited Lampitok's ability to present his defense.

 Here, prior to trial, the trial court granted the State's motion in limine that sought to exclude any evidence relating to the fact that Martin had smoked marijuana and that marijuana and accompanying paraphernalia were found in the stolen vehicle. The State's position was that such evidence, if not connected to the specific date and time in question, was not relevant.

Later, during Martin's trial testimony, there was considerable discussion and debate between the court and counsel over the extent to which Martin could testify about the subject. Ultimately, defense counsel was able to ask Martin (1) whether he had used drugs in that specific park with Lampitok on prior occasions, (2) whether he did so on the date in question, and (3) whether he made a deal with Lampitok to permit use of his vehicle in exchange for drugs. *Appellant's Appendix* at 102–03, 174, 192–93. Additionally, there was other, separate testimony concerning the marijuana found in the car. The trial court's limitation, if any, on Lampitok's examination of Martin was reasonable, within the latitude afforded to the court, and did not impinge on Lampitok's ability to present his defense.

### V. Hearsay

During trial, the trial court permitted Claypool to testify, over Lampitok's hearsay objection, that Fuller telephoned her and instructed her to find the gun and "get rid of it." *Appellant's Appendix* at 363–65. The State maintained, and the trial court agreed, that so long as what Fuller said to Claypool was a question or an instruction, it was not hearsay because it was not offered to prove the truth of the matter asserted.

 On appeal, Lampitok contends that the trial court erred in admitting this testimony because it constitutes inadmissible hearsay. We will only reverse a trial court's hearsay ruling for an abuse of discretion, and we will affirm the ruling on any legal basis apparent in the record. *Beverly v. State,* 801 N.E.2d 1254, 1259 (Ind.Ct.App.2004), *trans. denied;* see *also Swanigan v. State,* 720 N.E.2d 1257, 1258 (Ind.Ct.App.1999) (claims of erroneous evidentiary rulings reviewed for abuse of discretion and reversed only where decision is clearly against logic and effect of facts and circumstances).

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Here, Claypool testified about what Fuller, who did not testify at Lampitok's trial, said to her in a telephone call. Specifically, Claypool's testimony was as follows:

Q: In the last phone call did Mr. Fuller ask you to do something with a gun?

A: Yeah.

Q: Or direct you to do something with a gun?

A: Well he asked me to.

Q: Okay. What did he ask you to do?

A: Well he told me that—he just asked me to find it and to get rid of it and that's what I did.

*Appellant's Appendix* at 364–65.

 When an out-of-court statement is challenged as hearsay, we first determine whether the testimony describes an out-of-court statement that asserts a fact susceptible of being true or false. *Vertner v. State,* 793 N.E.2d 1148,

1151 (Ind.Ct.App.2003). If the statement contains no such assertion, it cannot be hearsay and the objection should accordingly be overruled. *Id.* However, if the statement does contain an assertion of fact, we consider the evidentiary purpose of the proffered statement; if it is to prove the fact asserted, and there are no applicable hearsay exceptions, the statement is inadmissible as hearsay. *Id.*

 The State's position is that "[t]rue requests, commands, and questions are not assertions, and evidence regarding such utterances may come in because they are not offered for the truth of the facts asserted." *Appellee's Brief* at 13 (citing *Bustamante v. State*, 557 N.E.2d 1313, 1316 (Ind.1990)). While we agree with this general principle, we do not agree that an assertion can never be found in a question or command. "[T]he grammatical form of the utterance does not govern whether it fits the definition of hearsay." *Carter v. State*, 766 N.E.2d 377, 382 (Ind.2002) (citing *Powell v. State*, 714 N.E.2d 624, 627–28 (Ind.1999)). Indeed, " 'An utterance that is in the form of a question can in substance contain an assertion of a fact.' " *Id.* (quoting *Powell*, 714 N.E.2d at 627–28). For instance, the question "Joe, why did you stab Bill?" contains a factual allegation, where as the question "What is your name?" has no factual content or assertion in it, nor does the command "Tell me your name!" *See Powell*, 714 N.E.2d at 628.

 Here, implicit in Fuller's command or request to Claypool to find the gun and dispose of it is the factual assertion that there was, in fact, a gun used in the course of the offense, which was a contested issue of fact at trial. Therefore, we conclude that the utterance was offered for the truth of the matter asserted and constituted hearsay. Accordingly, the trial court should not have admitted it. However, errors in the admission of evidence are

to be disregarded as harmless unless they affect the substantial rights of the defendant. *Goudy v. State*, 689 N.E.2d 686, 694 (Ind.1997); *see also Marcum*, 725 N.E.2d at 862 (because testimony did not affect substantial rights, any error in admission was harmless).

 Here, Lampitok was convicted and sentenced only on the carjacking charge, for which we found sufficient evidence to convict. He was acquitted of the criminal confinement charge and the Class B robbery charge, which both alleged the use of a deadly weapon. Under these circumstances, the court's evidentiary ruling did not affect Lampitok's substantial rights. *See Powell*, 714 N.E.2d at 628–29 (although hearsay question that contained factual allegation regarding use of guns should have been excluded, error was harmless in light of other evidence that guns were used in shooting incident).

## VI. Conduct of Judge

Lampitok urges that we vacate his convictions because the trial judge allegedly slept during a portion of his counsel's closing argument. He argues that this conduct deprived him of a fair trial because it implied to the jury that Lampitok's position was not worthy of attention.

First, there is no direct evidence in the record before us that the judge was, in fact, asleep. Rather, the only evidence is that during his closing argument, defense counsel referred to objections and side bar conferences that occurred during trial regarding the marijuana found in the vehicle. At that point, the prosecutor objected. The next entry that appears in the transcript is Lampitok's counsel stating, "Am I boring you today, Your Honor?" *Appellant's Appendix* at 463–64. The trial judge then responded, "No just resting my glaucoma eyes." *Id.* The prosecutor then

withdrew his objection, and defense counsel continued with argument. This record, standing alone, does not establish that the judge was asleep.

Second, even if the judge was asleep or otherwise appeared to be asleep, there is no evidence that the jurors knew or even noticed this fact.

■ Third, if concerned about the incident, Lampitok did not express it at trial; that is, he did not make any objection, request a recess, side bar, explanation, or ask the judge to declare a mistrial. Accordingly, the issue is waived. *Whiting v. State*, 516 N.E.2d 1067, 1068 (Ind.1987) (in case where two jurors fell asleep during defense counsel's closing argument, but defense did not bring issue to attention of trial court, appellate court noted that defendant may not observe an error, make no objection, yet claim error as reason for reversal).

■ Fourth, even if we assume that the issue is not waived and the judge was indeed asleep, Lampitok's claim still fails. We agree that due process requires a fair trial with an impartial judge. *Cook v. State*, 734 N.E.2d 563, 566 (Ind.2000). However, unless Lampitok can establish prejudice, he is not entitled to any relief. *See United States v. White*, 589 F.2d 1283, 1289 (5th Cir.1979) (judge falling asleep during defense counsel's opening statement did not cause prejudice or warrant reversal).

■ Here, the alleged sleeping occurred, for some indiscernible period of time, during defense counsel's closing argument. The prosecutor objected to defense counsel's comments regarding objections having been made and side bar conferences having occurred on the issue of the discovered marijuana. The judge did not rule on the prosecutor's objection; however, the prosecutor withdrew it.

This sequence does not indicate that the judge made an erroneous ruling or disadvantaged Lampitok in any way, other than allegedly sending to the jury some implied message, of which we find no proof, that defense counsel's argument was not worthy of attention.

For all these reasons, we reject Lampitok's request for reversal on this basis.

## VII. Inconsistent Verdicts

■ Lampitok claims that his carjacking conviction cannot stand because the jury delivered "completely inconsistent verdicts" when it convicted him of carjacking and Class C felony robbery, but acquitted him of kidnapping and criminal confinement. *Appellant's Brief* at 11. When we review a claim of inconsistent jury verdicts, we take corrective action only when the verdicts are extremely contradictory and irreconcilable. *Powell v. State*, 769 N.E.2d 1128, 1131 (Ind.2002). In resolving this type of claim, we neither interpret nor speculate about the thought process or motivation of the jury in reaching its verdict. *Id.*

Lampitok's argument is that the jury, having acquitted him of the charges that alleged use of a deadly weapon (i.e., Class B felony robbery and criminal confinement), necessarily did not believe Martin's testimony that Lampitok and Fuller used a gun during the incident, and if the jury did not believe Martin about the gun, then the carjacking verdict, which required the use of force, cannot stand. We disagree.

■ A jury's verdict may be inconsistent or even illogical but nevertheless permissible if it is supported by sufficient evidence. *Powell*, 769 N.E.2d 1128 (citing *Totten v. State*, 486 N.E.2d 519, 522 (Ind. 1985)); *see also Hodge v. State*, 688 N.E.2d 1246, 1248–49 (Ind.1997) (when the trial results in acquittal on some charges and convictions on others, verdicts ordinarily

will survive a claim of inconsistency when the evidence is sufficient to support convictions). Here, we already determined that sufficient evidence existed to sustain Lampitok's carjacking conviction. That the jury chose to believe Martin's testimony that Lampitok and Fuller took the car by force, but did not rob him while using a deadly weapon, is entirely permissible. *Hodge*, 688 N.E.2d at 1248–49 (jury is free to credit some portions of witness's testimony and discredit other portions). The verdicts are thus neither contradictory nor irreconcilable.

## VIII. Sentencing

■ Lampitok alleges that his eighteen-year sentence "is manifestly unreasonable." *Appellant's Brief* at 17. By this, he evidently seeks us to employ our power of review under Ind. Appellate Rule 7(B), which permits us to revise a sentence if we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Here, we find no need for sentence revision.

■ The trial court imposed an eighteen-year sentence for Lampitok's Class B felony carjacking conviction, thus enhancing the presumptive ten-year sentence by eight years. IC 35–50–2–5. Sentencing decisions are entrusted to the sound discretion of the trial court. *Waibel v. State*, 808 N.E.2d 750, 760 (Ind.Ct.App. 2004), *trans. denied; Sanders*, 713 N.E.2d at 921. Such discretion includes the right

to enhance a presumptive sentence. *Wright v. State*, 665 N.E.2d 2, 6 (Ind.Ct. App.1996). A trial court's sentencing determination will be reversed only upon a showing of manifest abuse of that discretion. *Waibel*, 808 N.E.2d at 760.

■ On appeal, Lampitok asserts that, in sentencing him, the trial court penalized him for maintaining his innocence and that the punishment was based on "vindictive justice." *Appellant's Brief* at 17. We cannot agree. In reaching its decision, the trial court identified as a mitigator Lampitok's United States Marine Corps service, but determined his criminal history, which began in 1978, outweighed that mitigator. The trial court need not give the same weight to any mitigator that the defendant would give it. *See Wright*, 665 N.E.2d at 6 (consideration of mitigating factors is not mandatory and lies within the court's discretion). Further, one aggravator is sufficient to uphold an enhanced sentence.[3] *Id.* Accordingly, we find no error.

## IX. Habitual Offender Charge

■ On cross-appeal, the State asserts that the trial court erred when it granted Lampitok's motion for a directed verdict on the habitual offender count.[4] In order for a trial court to grant a motion for a directed verdict, there must be a total lack of evidence on an essential element of the crime, or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence.

---

**3.** Although Lampitok did not raise a challenge to his sentence under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004), we nevertheless note that even if our supreme court were to find that Indiana's sentencing scheme runs afoul of *Blakely*, that determination would not seem to affect Lampitok's enhanced sentence. *See Carson v. State*, 813 N.E.2d 1187, 1189 (Ind. Ct.App.2004) (stating that criminal history aggravator relies on convictions that "have already been proven beyond a reasonable doubt

and are thus exempt from the *Apprendi* rule as clarified by *Blakely*").

**4.** We hereby deny Lampitok's motion to strike which asked us not to consider any argument or discussion of the habitual offender issue that appears in both the State's brief and his own. Lampitok asserted that the State had waived the issue; however, it is properly before this court as a cross-appeal issue.

*Stewart v. State,* 688 N.E.2d 1254, 1258 (Ind.1997); *Guy v. State,* 678 N.E.2d 1130, 1134 (Ind.Ct.App.1997).

In this case, the debate is whether the State succeeded in proving two prior unrelated felonies, as defined by IC 35–50–2–8, Indiana's habitual offender statute. Here, the two underlying felonies upon which the prosecutor relied to charge Lampitok with being an habitual offender were: (1) a 1995 Illinois conviction for delivery of a controlled substance and criminal drug conspiracy,[5] and (2) a 1986 Illinois conviction for criminal damages to government supported property and threatening a public official. In the habitual offender phase of the trial, Lampitok requested, and ultimately received, a directed verdict, on the basis that the 1995 conviction did not qualify as a prior unrelated felony under IC 35–50–2–8(d)(3) and that, therefore, the State had failed to establish two prior unrelated felonies.

▮ To resolve the issue, we must examine and interpret the habitual offender statute, specifically subsection (d)(3). A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Townsend v. State,* 793 N.E.2d 1092, 1094 (Ind. Ct.App.2003), *trans. denied.* When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Id.* However, we may not interpret a statute that is clear and unambiguous on its face. *Id.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* The language employed in a statute is deemed to have been used intentionally. *Id.*

IC 35–50–2–8(d) provides, in relevant part:

A conviction does not count for purposes of this section as a prior unrelated felony conviction if:

. . . .

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27[;]

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

▮ Accordingly, we must determine whether subsections (d)(3)(A), (B), and (C) all apply. If so, the 1995 conviction does not qualify as a prior unrelated felony, and the directed verdict was appropriate.

Subsection (d)(3)(A) inquires whether the relevant conviction is an offense under IC 16–42–19, the Indiana Legend Drug Act, or IC 35–48–4, the chapter defining and proscribing offenses relating to controlled substances. The State argues Lampitok's 1995 Illinois conviction is not "an offense under ... IC 35–48–4," i.e., not an Indiana conviction, and, therefore, subsection (d)(3)(A) does not apply. Lampitok, on the other hand, maintains that the

---

**5.** The record before us does not identify whether judgment of conviction and sentence were entered on the crime of dealing or the crime of drug conspiracy or both.

1995 Illinois delivery and drug conspiracy conviction is clearly a drug related offense that falls within the scope of IC 35–48–4, and subsection (d)(3)(A) applies.

We agree with Lampitok. His 1995 conviction for delivery of a controlled substance and criminal drug conspiracy, if committed in Indiana, would have fallen within IC 35–48–4. To exclude a foreign conviction from the equation, as the State proposes, would treat Indiana drug offenders differently from out-of-state offenders, which we do not believe the legislature intended to do. Indeed, IC 35–50–2–1 expressly includes foreign convictions within the scope of the habitual offender sentencing scheme. *See* IC 35–50–2–1 (defining felony conviction as conviction in any jurisdiction at any time with respect to which the convicted person might have been imprisoned for more than one year). Accordingly, we hold that, under the circumstances before us, subsection (d)(3)(A) applies.

Subsection (d)(3)(B) inquires whether the offense is not listed in IC 35–50–2–2(b)(4). Neither delivery of controlled substances nor criminal drug conspiracy appears in section 2(b)(4).[6] Thus, subsection (d)(3)(B) applies.

Subsection (d)(3)(C) inquires whether the total number of unrelated convictions for dealing in certain controlled substances does not exceed one. According to the record before us, Lampitok has accrued only one delivery conviction, namely the 1995 Illinois conviction. Thus, his total number of unrelated dealing convictions does not exceed one, and subsection (d)(3)(C) applies.

Because subsections (d)(3)(A), (B), and (C) apply, Lampitok's 1995 conviction does not count as a prior unrelated felony conviction, and we hold that the trial court did not err in granting Lampitok's motion for a directed verdict on the habitual offender charge.[7]

Affirmed.

BAKER, J., and ROBB, J., concur.

---

6. We note that certain dealing offenses do appear in subsection 2(b)(4)(O) and (P); however, they address specific circumstances not relevant here, such as delivering to a minor on or near school property.

7. Recently, in *Johnican v. State,* 804 N.E.2d 211 (Ind.Ct.App.2004), Judge Vaidik had the opportunity to examine and apply subsection (b)(3) of the habitual offender statute, which virtually parallels the language of subsection (d)(3) that we faced here. We agree with her observation concerning "the confusing manner" in which the subsection is drafted. *Id.* at 216.