ATTORNEY FOR APPELLANT
Bruce E. Andis
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 49S02-0605-CR-174

TOMMY MCELROY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, Criminal Division I, No. 49G01-0408-FC-144046
The Honorable Tanya Walton-Pratt, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0505-CR-381

**May 2, 2007**

**Rucker, Justice.**

**Statement of the Case**

The issue presented is whether the trial court abused its discretion when it imposed enhanced concurrent sentences for two counts of reckless homicide and one count of criminal

recklessness. Finding that the valid aggravating factor is substantiated by the trial court's sentencing statements and that it supports an enhanced sentence, we conclude there was no abuse of discretion.

**Facts and Procedural History**

On the afternoon of July 29, 2003, a paint truck owned by Roland's Painting and Trim broke down after leaving a job site in Indianapolis. Another paint truck, owned by the company and already carrying nine employees, stopped to pick up the eight stranded employees. The eight painters joined five others in the enclosed cargo area in the back of the truck. In addition to holding thirteen people, the cargo area contained highly flammable paints, lacquers, and thinners, and all of the passengers were aware of these substances. The rear cargo door was the only exit from the cargo area, and for ventilation the workers riding in the back propped up the overhead cargo door with a small ladder and secured it with a bungee cord.

Tommy McElroy sat next to Otis Turner in the cargo area of the paint truck and repeatedly used his lighter in an effort to ignite the newspaper that Turner was reading despite Turner's demand that he stop. Turner then stood and poured lacquer thinner onto the truck floor in the midst of the employees. McElroy leaned over and flicked his lighter toward the lacquer, causing the fumes to ignite immediately and engulf the cargo area in flames. The trapped men banged on the walls of the cargo area, and the driver pulled the truck over on Interstate 465. All of the painters riding in the cargo area were seriously burned, and two, Turner and John (Jay) Webster, died from their injuries.

The State charged McElroy with two counts of reckless homicide, Class C felonies, see Ind. Code § 35-42-1-5, for the deaths of Turner and Webster and one count of criminal recklessness, a Class D felony, see I.C. § 35-42-2-2(d), for the injuries to the other ten men. On January 10, 2005, McElroy pleaded guilty as charged pursuant to a plea agreement that called for his sentences to be served concurrently but otherwise left the State and the defense free to argue aggravating and mitigating factors. At the conclusion of a hearing during which both sides presented several witnesses' testimony, in an oral statement the trial court found the following

2

aggravating factor: the nature and circumstances of the offense, including the effect upon the victims and their family members. Tr. at 89-90. The court also found the following mitigating factors: (1) the defendant pleaded guilty and accepted responsibility; (2) the defendant had "no prior criminal history;" and (3) long term incarceration would pose a hardship upon the defendant's family. Tr. at 88. Finding that the sole aggravating factor outweighed the mitigating factors, the trial court sentenced McElroy to a total of eight years in the Department of Correction. Tr. at 90. The written abstract of judgment, issued the same day and signed by the trial court, was different in two ways from the oral sentencing statement. Instead of listing the lack of criminal history as a mitigating factor, the abstract of judgment reads, "Court finds aggravating the defendant has a prior criminal history." App. at 14. It also found as aggravating the risk that the defendant would commit another crime. The abstract of judgment otherwise reflected the same aggravating and mitigating factors, recited that the aggravators outweighed the mitigators, and showed a sentence of eight years. Id.

McElroy appealed. Noting the discrepancies between the trial court's oral sentencing statement and the abstract of judgment, the Court of Appeals reversed and remanded for resentencing, concluding that it could not "say with confidence that McElroy's enhanced sentence should be affirmed on appeal." McElroy v. State, No. 49A02-0505-CR-381, slip op. at 12 (Ind. Ct. App. Dec. 8, 2005). Having previously granted transfer, we now affirm the trial court.

**Discussion**

McElroy raises two issues on appeal. First, he argues that the trial court erred by using improper aggravating factors to impose an enhanced sentence. Second, he argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We will address each in turn.

Generally, sentencing determinations are within the trial court's discretion. Cotto v. State, 829 N.E.2d 520, 523 (Ind. 2005). We review the trial court's sentencing decision for an abuse of that discretion. Powell v. State, 769 N.E.2d 1128, 1134 (Ind. 2002). An abuse of

3

discretion has occurred when the sentencing decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006). Trial courts have the discretion to deviate from the presumptive[1] sentence upon finding and weighing any aggravating or mitigating circumstances. Bacher v. State, 722 N.E.2d 799, 801 (Ind. 2000). However, "[w]hen a trial court enhances a presumptive sentence, it must state its reasons for doing so, identifying all significant aggravating and mitigating factors; stating the facts and reasons that lead the court to find the existence of each such circumstance; and demonstrating that the court has evaluated and balanced the aggravating and mitigating factors in determining the sentence." Id. This serves to guard against arbitrary sentences and to provide an adequate basis for appellate review. Id.; Morgan v. State, 675 N.E.2d 1067, 1074 (Ind. 1996).

As a general rule, when we are faced with a discrepancy between a sentencing order and an abstract of judgment, we conclude that the sentencing statement rather than the abstract of judgment controls. This is so because an abstract of judgment is distinct from a written sentencing order and is not the "judgment of conviction." Robinson v. State, 805 N.E.2d 783, 794 (Ind. 2004). It is a "form issued by the Department of Correction and completed by trial judges for the convenience of the Department." Id. at 792. In contrast, a valid written judgment meets the statutory criteria of Indiana Code section 35-38-3-2.

In this case, however, the information required of a sentencing judgment is contained within the abstract of judgment. More specifically, Indiana Code section 35-38-3-2 requires the trial court to prepare and certify a written judgment of conviction and sentence including the following information: "(1) the crime for which the convicted person is adjudged guilty and the classification of the criminal offense; (2) the period, if any, for which the person is rendered incapable of holding any office of trust or profit; (3) the amount of the fines or costs assessed, if any, whether or not the convicted person is indigent, and the method by which the fines or costs

---

[1] Subsequent to the date McElroy was sentenced, the Legislature amended Indiana's sentencing statutes to provide for "advisory sentences" rather than "presumptive sentences." See Pub. L. No. 71-2005, § 5 (codified at I.C. § 35-50-2-1.3 (2005)). In addition, the amendments permit a trial court to impose any sentence that is authorized by statute and permissible under the Indiana Constitution "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Pub. L. No. 71-2005, § 3 (codified at I.C. § 35-38-1-7.1(d) (2005)).

4

are to be satisfied; (4) the amount of credit, including credit time earned, for time spent in confinement before sentencing; and (5) the amount to be credited toward payment of the fines or costs for time spent in confinement before sentencing." Here, the abstract of judgment contains this information and is certified. App. at 14. Therefore, we are faced with a situation in which the oral and written sentencing statements conflict.

The approach employed by Indiana appellate courts in reviewing sentences in non-capital cases is to examine both the written and oral sentencing statements to discern the findings of the trial court. Corbett v. State, 764 N.E.2d 622, 631 (Ind. 2002) ("In reviewing a sentencing decision in a non-capital case, we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings.") (quoting Walter v. State, 727 N.E.2d 443, 449 (Ind. 2000)); Strong v. State, 538 N.E.2d 924, 929 (Ind. 1989) ("In addition to the discussion set forth in the separate sentencing order, this Court has reviewed the trial court's thoughtful comments at the conclusion of the sentencing hearing."); see also Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006); Powell v. State, 751 N.E.2d 311, 315 (Ind. Ct. App. 2001); Newman v. State, 719 N.E.2d 832, 839 (Ind. Ct. App. 1999). Rather than presuming the superior accuracy of the oral statement, we examine it alongside the written sentencing statement to assess the conclusions of the trial court. This Court has the option of crediting the statement that accurately pronounces the sentence or remanding for resentencing. Willey v. State, 712 N.E.2d 434, 446 n.8 (Ind. 1999) ("[T]he trial court issued its written sentencing order that was consistent with the Abstract of Judgment, but at odds with the oral pronouncement at the sentencing hearing. . . . Based on the unambiguous nature of the trial court's oral sentencing pronouncement, we conclude that the Abstract of Judgment and Sentencing Order contain clerical errors and remand this case for correction of those errors."). This is different from pronouncing a bright line rule that an oral sentencing statement trumps a written one.

We now proceed to examine both sentencing statements. McElroy challenges the aggravating circumstances that are identified in the oral and written sentencing statements. The defendant asserts that none of the aggravators were proper.

5

McElroy argues that the trial court improperly found the nature and circumstances of the offense aggravating because the nature and circumstances are actually elements of the offenses of reckless homicide and criminal recklessness. The Court of Appeals rejected this argument and so do we. It is true that a material element of a crime may not be used as an aggravating factor to support an enhanced sentence. Ellis v. State, 707 N.E.2d 797, 804 (Ind. 1999). However, when evaluating the nature of the offense, "the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors." McCarthy v. State, 749 N.E.2d 528, 539 (Ind. 2001). The trial court must then "detail why the defendant deserves an enhanced sentence under the particular circumstances." Vasquez v. State, 762 N.E.2d 92, 98 (Ind. 2001). Generally, this aggravator is "thought to be associated with particularly heinous facts or situations." Id. at 97 (quoting Smith v. State, 675 N.E.2d 693, 698 (Ind. 1996)).

The trial court did far more than recite the nature and circumstances of the offense as an aggravating factor. Here, the transcript of the sentencing hearing shows that the trial court examined the unique circumstances of McElroy's reckless behavior and deemed them "horrific" and "heinous." Tr. at 89. See Vasquez, 762 N.E.2d at 98; Smith, 675 N.E.2d at 698. The trial court detailed the debilitating injuries and complications suffered by the ten surviving victims. Thus the trial court did not abuse its discretion in recognizing this aggravating factor.

McElroy next contends that the trial court found the effect of the offense upon the victims and their families to be a distinct aggravating factor. It is settled law that where "[t]here is nothing in the record to indicate that the impact on the families and victims in this case was different than the impact on families and victims which usually occur in such crimes," this separate aggravator is improper. Mitchem v. State, 685 N.E.2d 671, 680 (Ind. 1997). We read the sentencing hearing transcript, however, as demonstrating that the trial court did not find the victim impact to be a separate aggravator. Rather, it is apparent that the trial court's discussion of the impact of McElroy's behavior upon the victims and their families was a part of the court's explanation of why the offense was particularly "heinous" and "horrendous" in nature. Tr. at 89-90. The court's discussion of the deleterious effects of McElroy's actions upon multiple victims and their caretaking family members goes to the weight that the trial court gave to the

nature and circumstances aggravator. The trial court did not abuse its discretion in weighing the impact upon the victims and their families as part of the nature and circumstances of the offense.

McElroy also argues that the trial court abused its discretion in finding that there is a "great" risk that he will commit another crime. App. at 14. Although the trial court was statutorily required to consider this factor in sentencing, I.C. § 35-38-1-7.1(a)(1) (1998), this aggravating circumstance is listed on the written sentencing statement but is unsupported by commentary in either the written or oral sentencing statements. Because the trial court did not "stat[e] the facts and reasons that le[]d the court to find the existence" of this circumstance, we agree with McElroy that this was an improper aggravating factor. Bacher, 722 N.E.2d at 801.

We turn finally to the question of McElroy's criminal history. McElroy asserts that the trial court abused its discretion when it relied upon his criminal history to enhance his sentence. He points to the discrepancy between the oral sentencing statement, during which the trial court found "as mitigating the fact that Mr. McElroy has no prior criminal history," Tr. at 88, and the subsequent written sentencing order, which found the defendant's prior criminal history aggravating. App. at 14.

We make two observations. First, neither the oral sentencing statement nor the written judgment reflects an explanation of McElroy's criminal history. There are no facts used to support this assertion as required by Bacher. Second, the record reveals that McElroy's criminal past includes two charges but no convictions. As a juvenile, he was charged with theft but never tried. As an adult, he was charged with possession of marijuana, but this charge was also dismissed. App. at 45. Charges that do not result in convictions are not *by themselves* permissible as aggravating criminal history. "A record of arrest, without more, does not establish the historical fact that the defendant committed a criminal offense on a previous occasion such that it may be properly considered as evidence that the defendant has a history of criminal activity." Tunstill v. State, 568 N.E.2d 539, 544 (Ind. 1991). Charges that do not result in convictions may be considered by the sentencing court in context, but something more than mere recitation unaccompanied by specific allegations should be shown. We have held that "[i]n order to enhance a criminal sentence based, in whole or in part, on the defendant's history

of criminal activity, a sentencing court must find instances of specific criminal conduct shown by probative evidence to be attributable to the defendant. A bare record of arrest will not suffice to meet this standard." Id. Because no evidence of specific criminal conduct by the defendant was given in either the oral sentencing or the written sentencing document, on review we must find that criminal history is not a valid aggravator.

We have concluded that the additional aggravating factors in the written sentencing statement — the defendant's criminal history and the risk that he will commit another crime — are invalid and that the oral pronouncement did not deem the impact upon the victims and their families a separate aggravator, and the only remaining discrepancy between the two sentencing statements is the removal of criminal history as a mitigator in the written statement. We could remand this cause to the trial court for a clarification of whether it found McElroy's history of charges with no convictions as a mitigating factor. We decline to do so however because any error here is harmless. See Whatley v. State, 685 N.E.2d 48, 50 (Ind. 1997). In its oral sentencing order, where the trial court found this mitigator, McElroy received a sentence of eight years. In the subsequent written statement which did not mention this mitigating factor, McElroy received precisely the same sentence.

In addition, we cannot say that the trial court abused its discretion in weighing the one valid aggravator — the nature and circumstances of the offense — against the multiple mitigating factors. We have concluded that the trial court's explanation of the lingering impact of the defendant's actions upon the victims and their families clarified the aggravating weight that the court gave to the nature and circumstances of the offense. This aggravating factor was heavily weighed against mitigating factors that may reasonably be afforded less weight. First, although we have long held that a defendant who pleads guilty deserves "some" mitigating weight be given to the plea in return, Cotto, 829 N.E.2d at 525, a guilty plea may not be significantly mitigating when the defendant receives a substantial benefit in return, Sensback v. State, 720 N.E.2d 1160, 1165 (Ind. 1999), or when the defendant does not show acceptance of responsibility. Francis v. State, 817 N.E.2d 235, 238 n.3 (Ind. 2004). Here, in exchange for his plea, the defendant received the benefit of concurrent sentences. Additionally, his testimony at the sentencing hearing indicated equivocal acceptance of responsibility for the deaths of two

coworkers and serious injuries of ten others.[2]  We will not disturb the trial court's determination that this was not a significant mitigating factor.  Second, the trial court was within its discretion to afford the defendant's lack of criminal convictions less mitigating weight than it gave to the valid aggravator.  Although lack of criminal history is a significant mitigating factor, Powell, 769 N.E.2d at 1136 n.7, the trial court determines the weight assigned to mitigating circumstances.  Kingery v. State, 659 N.E.2d 490, 498 (Ind. 1995).  We have written that a "lack of criminal history [does not] automatically outweigh[] any valid aggravating circumstance.  Rather, it is a balancing test."  McCarthy, 749 N.E.2d at 539.  See also Thacker v. State, 709 N.E.2d 3, 10 (Ind. 1999); Bunch v. State, 697 N.E.2d 1255, 1258 (Ind. 1998).  The trial court did not err in assigning less weight to McElroy's lack of criminal history than to the nature and circumstances of the offense.  As we have noted, the trial court amply explained its rationale for assigning that aggravator significant weight.  See Powell, 769 N.E.2d at 1135-36.  Finally, the hardship to a defendant's dependents is not always a significant mitigating factor.  Bonds v. State, 721 N.E.2d 1238, 1243 (Ind. 1999).  Moreover, this Court has affirmed a trial court's conclusion that the nature and circumstances of an offense may by themselves outweigh multiple mitigating circumstances.  Thacker, 709 N.E.2d at 9-10.  Such is the case here, and we do not find that the trial court abused its discretion.

Finally, McElroy argues that his eight-year sentence is inappropriate in light of the nature of the offense and the character of the offender.  Ind. Appellate Rule 7(B).  As the trial court found, the nature of the offense was "heinous" and "horrific."  Tr. at 89.  Because of the defendant's recklessness in igniting fumes within an enclosed truck full of people who had no means of escape, two people died and eleven others, including himself, were seriously injured.  The fire started by the defendant "destroyed [the victims] mentally, physically and financially."  Id.  Regarding the defendant's character, it is true that he had no criminal convictions prior to these events.  However, even while apologizing during his sentencing hearing, he deflected blame for the fire.  Tr. at 51-55.  From these facts, we cannot conclude that eight years is an

---

[2] At his sentencing hearing, McElroy testified as follows:  "I am very sorry for what happened.  I'm – everybody in this is payin' for it.  I'm payin' for it.  My kids are payin' for it.  My wife is payin' for it.  I know two lives were lost, but I'm not the sole reason that they were lost.  I'm not the only one that was involved. . . . [I]f [the lacquer] wouldn't have been thrown – it wouldn't have happened. . . . If it wouldn't have been thrown and we wasn't in the back of that truck, then none of this s*** would have happened.  Simple as that."  Tr. at 50-51.

inappropriate sentence for two counts of reckless homicide and one count of criminal recklessness.

## Conclusion

The sentence imposed by the trial court is supported by the sentencing orders, and the defendant's eight-year sentence is not inappropriate under Indiana Appellate Rule 7(B).

Affirmed.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.