**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ROBERT O. BROYLES, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )    No.  48A02-1103-CR-338 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Thomas Newman, Jr., Judge
Cause No.  48D03-1003-FC-99

**January 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

Robert O. Broyles appeals his sentence for class D felony voyeurism,[1] class D felony child solicitation,[2] and class C felony sexual misconduct with a minor.[3]

We affirm.

ISSUE

Whether the trial court erred in sentencing Broyles.

FACTS

In Fall of 2009, Broyles made sexual comments to his fifteen-year-old step-granddaughter, M.J. While M.J. stayed the weekend at Broyles' house, he offered to perform oral sex on her and "teach[] her about sex." (Tr. 8). On one occasion, Broyles cupped M.J.'s breast with his hands while he asked her about sexual activity. Broyles also constructed a wooden cabinet with a two-way mirror that he attached to the shower wall so he could watch M.J. as she took a shower. Broyles told M.J. that he built the cabinet so she would have a place for her soap when she showered. After Broyles built the cabinet, he began sleeping in the bedroom that was adjacent to the bathroom wall.

In January 2010, M.J. reported to the Madison County Department of Child Services ("DCS") that her grandfather, whom she called "papaw," had made inappropriate sexual comments to her and that she felt as if he was watching her take showers. DCS contacted the Madison County Sheriff's Department, which later executed

---

[1] Ind. Code § 35-42-4-5.

[2] I.C. § 35-42-4-6(c).

[3] I.C. § 35-42-4-9(b)(1).

a search warrant on Broyles' house. The sheriff's department saw the shower cabinet with the two-way mirror and discovered that Broyles had a camera hooked up to a VCR in the adjacent bedroom. They also found a VCR tape upon which Broyles had videotaped M.J. while she was naked and taking a shower on ten different occasions.

On March 4, 2010, the State charged Broyles with class D felony voyeurism, class D felony child solicitation, and class C felony sexual misconduct with a minor. On the day of his scheduled trial, January 25, 2011, Broyles entered into a plea agreement in which he agreed to plead guilty as charged, and the State conceded to concurrent sentencing in light of Broyles' lack of criminal history. Broyles pled guilty to all three charges, and the trial court accepted his pleas.

The trial court held a sentencing hearing on February 23, 2011. During this hearing, M.J.'s mother testified that Broyles' crimes against M.J. had caused her to "completely withdraw[]" from her friends and softball, (tr. 23), caused her to have nightmares about Broyles coming to "finish[] what he started," (tr. 23), made her afraid to take a shower without putting a curtain on the mirror, and "put a fear in [her] that will never go away." (Tr. 25). She also testified that M.J. had been especially humiliated because the newspaper reported that Broyles had done "awful things" to a "minor female relative," and M.J. was Broyles' only such minor relative. (Tr. 23). In the presentence investigation report ("PSI"), Broyles admitted that "[i]t should have never happened" but at the same time he blamed M.J.'s mother, stating, "[i]f her mother had been a mother she would have kept her at home." (App. 38). During the sentencing hearing, Broyles testified that "[i]t was all [his] fault" and that he was "truly sorry" for what he did, but he

3

also stated that he had "spent the last year . . . in [his] own prison at home" and could not "watch the ball games or anything, which [he] love[d] to do, but now [he] c[ould not]." (Tr. 27).

When imposing Broyles' sentence, the trial court addressed Broyles' statement of remorse and the reasons for the sentence imposed:

> The aggravating - - the mitigating circumstances [that] ha[ve] been articulated by both the prosecutor and the defense attorney would be the defendant's lack of criminal history, the fact that []he pled, the fact that he's articulated remorse. The Court finds that based upon the crime that's been committed here that those mitigating circumstances are basically [d]e-minimus and of no significant value. The fact that he pled at the last minute when the case was ready to [go to] trial and as [the prosecutor] indicated the victim in this case was willing to testify. Remorse is - - has been articulated, but based upon the crimes that have been committed and the affect [sic] that it's had on the victim in this case, remorse is very insignificant. The aggravating circumstances are that the defendant has committed a serious violation of trust with somebody that cared for and trusted him for a long period of time during the child's life. The span of time during which the offenses were committed and the elaborate way in which the defendant was able to construct and effectuate the crimes of voyeurism and the fact that he's charged with more than one count against the same victim over a significant period of time. The aggravating circumstances outweigh the mitigating circumstances justifying an eight (8) year executed sentence to prison.

(Tr. 35-37). The trial court sentenced Broyles to an aggregate term of eight years by sentencing him to three years for each of his two class D felony convictions and eight years for his class C felony conviction, and, pursuant to the plea agreement, ordering him to serve these sentences concurrently.

4

## DECISION

Broyles argues that the trial court erred in sentencing him. Specifically, Broyles contends that: (a) the trial court abused its discretion in its finding of aggravators and mitigators; and (b) his sentence is inappropriate.

### A. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91. Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to properly weigh such factors. *Id.* at 491.

1. *Mitigators*

Broyles argues that the trial court erred by failing to consider his lack of criminal history, guilty plea, and remorse as significant mitigating factors.

One way in which a court may abuse its discretion is by entering a sentencing statement that omits mitigating circumstances that are clearly supported by the record and advanced for consideration. *Id.* at 490–91. However, a trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State,* 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

Broyles contends that the trial court abused its discretion by failing to consider his lack of criminal history, guilty plea, and remorse as "significant" mitigating factors. Broyles' Br. at 9. As shown in the facts above, the trial court found these to be mitigating circumstances but determined that they were "of no significant value." (Tr. 36).[4] Because we may not review the relative weights that the trial court assigned to these mitigating factors, *see Anglemyer,* 868 N.E.2d at 490, we cannot say that the trial court abused its discretion in its determination of mitigating circumstances.

---

[4] While the trial court mentioned Broyles' remorse as a mitigating factor during the sentencing hearing, the trial court's written order does not list it as a mitigating factor. We may, however, review both oral and written statements in order to identify the findings of the trial court. *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007).

2. *Aggravators*

Broyles first argues that the trial court's inclusion of the nature and circumstance of the crime as an aggravator was inadequate because it did not point to facts outside the factual elements of the crime.

Broyles is correct that the trial court may not use a material element of his crime as an aggravating circumstance to enhance his sentence. *See McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). However, the nature and circumstances of a crime do constitute a proper aggravating circumstance. *See id.* Here, the trial court did not refer to a material element of the crimes when discussing the nature and circumstances of the crimes. Instead, the trial court explained that the nature and circumstances was an aggravating factor due to "[t]he span of time during which the offenses were committed and the elaborate way in which the defendant was able to construct and effectuate the crimes of voyeurism[.]" (Tr. 36). Accordingly, we cannot say that the trial court erred when considering the nature and circumstances to be an aggravating circumstance.

Broyles also contends that the trial court improperly found as an aggravator the fact that he committed multiple crimes against M.J. Contrary to Broyles' claim, "[t]he law is settled that the fact of multiple crimes is a valid aggravating factor." *McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007). The factual basis revealed that Broyles had, on ten separate occasions, videotaped M.J. while she was naked and showering. Therefore, we conclude that the trial court did not abuse its discretion in its consideration of this aggravator.

7

B. *Inappropriate sentence*

Broyles argues that his eight-year sentence was inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

Broyles contends that the trial court erred by imposing an eight-year "maximum" sentence. Broyles' Br. at 6. We note, however, that Broyles received the maximum sentence under the plea agreement, not under the law for the commission of his three separate offenses not arising out of the same criminal episode. Indeed, the sentencing range for a class C felony is between two years and eight years, with the advisory sentence being four years, I.C. § 35-50-2-6, while the sentencing range for a class D felony is between six months and three years, with the advisory sentence being one and one-half years. I.C. § 35-50-2-7. Thus, the maximum term that Broyles could have potentially faced as charged if he had not pled guilty was fourteen years. Here, the trial court sentenced Broyles to three years for each of his two class D felony convictions and

8

eight years for his class C felony conviction, and, pursuant to the plea agreement, it ordered him to serve these sentences concurrently.

Regarding Broyles' offenses, the record reveals that Broyles violated a position of trust with his fifteen-year-old granddaughter when he—on at least ten occasions—watched and videotaped her while she was naked in the shower. Broyles was only able to do so after he built and installed an elaborate mirrored shower cabinet, which he told his granddaughter he had built so she would have a place to store her soap and shampoo. Broyles, however, used the cabinet to secretly peep at her from the adjacent bedroom and to videotape her with a camera and video recorder that he set up in that same bedroom. Additionally, Broyles also fondled his granddaughter's breast and offered to perform oral sex on her and "teach[] her about sex." (Tr. 8). The record reveals that Broyles started making sexual comments to M.J. in the Fall of 2009 and that he only stopped after M.J. reported him to DCS in January 2010.

In support of his character, Broyles points to his guilty plea, lack of criminal history, and prior work history. The trial court acknowledged his guilty plea and noted that it was not of significant value because he pled guilty on the day of his scheduled trial when the case was already ready for trial and M.J. was ready to testify against him. The trial court also recognized his lack of criminal history but found it to be "[d]e-minimus" given the span of time and the number of crimes Broyles committed against his granddaughter and the effect that his actions had on her. (Tr. 36). The record reveals that Broyles was sixty-eight years old and retired at the time of the offense. The record also shows that Broyles had helped M.J. with softball since she was five years old and that she

9

frequently spent the weekend with Broyles, whom she called papaw. Broyles took advantage of the position of trust that he had with his granddaughter, who the PSI reveals had lost her father to suicide within two years prior to the crimes. Broyles' character is further revealed by the elaborate planning and the building of a secretive device that he used to commit his crimes of voyeurism. Despite his deliberate and planned out actions against his granddaughter, Broyles blamed M.J.'s mother for his crimes, stating that her mother should have just kept M.J. at home.

Broyles has not persuaded us that, under the circumstances herein, his aggregate sentence of eight years for the commission of class D felony voyeurism, class D felony child solicitation, and class C felony sexual misconduct with his granddaughter is inappropriate. Therefore, we affirm the trial court's sentence.

Affirmed.

BAKER, J., and BAILEY, J., concur.