# FOR PUBLICATION



**FILED**

Aug 30 2013, 5:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA


JOSHUA GOMILLIA,                              )
                                             )
    Appellant-Defendant,             )
                                             )
        vs.                      )          No. 49A02-1301-CR-77
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.              )


APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49G22-1106-FA-45521


**August 30, 2013**


**OPINION - FOR PUBLICATION**


**BARNES, Judge**

## Case Summary

Joshua Gomillia appeals his forty-five-year sentence for Class A felony criminal deviate conduct and Class B felony robbery. We affirm.

## Issue

Gomillia raises one issue, which we restate as whether the trial court abused its discretion when it sentenced him.

## Facts

Late on June 22, 2011, and into the morning of June 23, 2011, Gomillia was with his friends Labronze Myles and Wendell Carter. Gomillia had smoked marijuana, drank alcohol, and taken several Xanax pills. Carter was gambling and lost a substantial amount of money. The three men decided to commit a robbery and drove to a residence in Indianapolis that Gomillia randomly selected. At approximately 6:20 a.m. on June 23, 2011, Gomillia, armed with a gun, rang the doorbell and entered E.K.'s home with Carter when E.K. answered the door. Both Gomillia's and Carter's faces were covered. Once inside E.K.'s home, Gomillia held a gun to E.K.'s head and forced her to perform oral sex on him and threatened to rape her. E.K. was also forced to perform oral sex on Carter. After the assault, Gomillia, Carter, and Myles stole E.K.'s car, ATM card, television, laptop, and other items.

On June 28, 2011, the State charged the men with two counts of Class A felony criminal deviate conduct, one count of Class B felony robbery, one count of Class B felony burglary, one count of Class B felony criminal confinement, and one count of Class D felony auto theft. Gomillia agreed to plead guilty to one count of Class A felony

2

criminal deviate conduct[1] and Class B felony robbery.  In exchange for his guilty plea, the

State agreed to dismiss the remaining charges.  The plea agreement required Gomillia to

cooperate with the State in the prosecution of Carter and Myles and capped Gomillia's

executed sentence at forty years.

In issuing its sentence, the trial court stated:

> This is indeed a tragedy.  It is a tragedy for [E.K.], Number one, but as I have previously stated in one of the other cases, what I have read that [E.K.] has submitted to the Court and what I remember of [E.K.] when she took the stand during the bench trial of one of the three defendants, she is an extremely strong person.  She is determined.  She is a gentle lady.  She is a sincere wonderful friend to those who know her and who have stuck by her, and who have come to court for her.  That doesn't happen in too many cases that I have handled over the years and it speaks very loudly of the type of person that [E.K.] is.

Tr. p. 54.  The trial court went on to discuss the impact of home invasions when victims

are not home, how Gomillia gained entry to E.K.'s home, and the impact of the crime on

E.K. and stated:

> And at your lead, not only was she victimized by the break-in, but you put a gun to her head and demanded that she suck your penis.  I don't care what drugs you were on and what you did previously that evening.  The choices you made that evening, Mr. Gomillia, were your choices.  And what you did to [E.K.] was an insult to these beautiful ladies:  your mother, your aunt, who came in to court and all the other ladies who are related to you and who are your friends.  In violating [E.K.], you violated them, as well.  And it is a tragedy for you and for your family because you have done good things growing up and you have been successful . . . , I am sure you

---

[1]  The written plea agreement references Count I, the count of criminal deviate conduct relating to Carter. At the guilty plea hearing, the prosecutor referenced the error and the abstract of judgment correctly references Count II, the count of criminal deviate conduct relating to Gomillia.

3

were the son that your mother and father raised and that you have re-become that person since your assault on [E.K.], and I am happy about that. But regardless of what you have re-become, that doesn't erase what you did on the 23rd of June. You have re-become the man that you were before the 23rd. [E.K.] is no longer the lady that she was on the 22nd, and she will never be that lady again. And thank God she is strong, she is intelligent, she is tender, she is gentle, and she has a wonderful support system, although her family is not in this town. She has that support system because of the person that she is. You have that support system because of the man that you were before the 23rd and what you are now trying to re-become. . . .

Id. at 57-58.

As mitigating, the trial court found that Gomillia had accepted responsibility, was genuinely remorseful, had no prior convictions, had cooperated with the prosecution, and was likely to respond affirmatively to rehabilitation. As aggravating, the trial court considered that Gomillia "led the whole thing" and that:

two strong, young, men force their way into this lady's home with a third colleague out in the car who gets worried about the sun coming up and you had better get out of there. The threats to this lady, the terror that you inspired in her, the whole circumstance of this crime. . . .

Id. at 61. The trial court concluded that the aggravators outweighed the mitigators. For the Class A felony criminal deviate conduct, the trial court sentenced Gomillia to forty-five years, with forty years executed and five years on work release and three years of probation. For the Class B felony robbery, the trial court sentenced Gomillia to ten years. The trial court ordered the sentences to be served concurrently. Gomillia now appeals.

4

**Analysis**

Gomillia argues the trial court abused its discretion when it sentenced him. We evaluate a sentence under the current "advisory" sentencing scheme pursuant to Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g by Anglemyer v. State, 875 N.E.2d 218 (Ind. 2007). The trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." Anglemyer, 868 N.E.2d at 491. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. "The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." Id.

Gomillia claims that the trial court improperly considered facts outside the record when it considered its impression of E.K. during her testimony in a co-defendant's trial and the people who came to court on her behalf. As an initial matter, the State argues this issue is waived because Gomillia failed to object to this line of reasoning at the sentencing hearing. Gomillia responds by asserting that an improper sentence constitutes fundamental error and cannot be ignored on appeal. See Groves v. State, 823 N.E.2d 1229, 1232 (Ind. Ct. App. 2005). Assuming this purported error is reviewable, we are not persuaded that the trial court abused its discretion when it referenced E.K.'s strength and support system.

Gomillia's argument is based on Anglemyer, where our supreme court explained that, to review a trial court's exercise of discretion in sentencing, we must be told of the reasons for imposing the sentence "'a statement of facts, in some detail, which are

5

peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record.'" Anglemyer, 868 N.E.2d at 490 (quoting Page v. State, 424 N.E.2d 1021, 1023 (Ind. 1981)). First, E.K. and several of her friends submitted letters to the trial court detailing the impact of the crime on E.K. and the steps she had taken to overcome the fear she experienced after the crime. Thus, the record generally supports the trial court's assessment of E.K. and her support system.

Further, even if the trial court's assessment of E.K. was based in part on its observation during a co-defendant's trial, there is no indication that this factor was a basis for imposing a particular sentence, let alone that the trial court considered it as an aggravator to support a more severe sentence. Instead, the trial court was simply making a statement about the resilience of the victim prior to its assessment of the aggravators and mitigators. Any error in the trial court's consideration of E.K.'s testimony at a co-defendant's trial was harmless because it did not impact the trial court's determination of Gomillia's sentence.

Gomillia also argues that the trial court abused its discretion by considering the material elements of the offenses as aggravators. According to Gomillia, when considering the whole circumstances of the crime, the trial court was primarily focused on the threats made to and the fear suffered by E.K.[2] Although the State agrees with the proposition that a trial court may not consider a material element of an offense as an

---

[2] Gomillia does not explain how his leadership role in the commission of the crimes was an element of either offense.

6

aggravator, this is no longer an accurate assessment of the law. The cases upon which the parties rely for this proposition were based on the application of the previous sentencing scheme.[3]

In Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008), our supreme court observed that "sentencing used to be a two-step process—imposing of the presumptive sentence, then deciding whether any aggravators or mitigators warranted deviation." Since the 2005 modification of the sentencing scheme, however, sentencing "consists of only one discretionary determination." Id. "Thus, a sentence toward the high end of the range is no longer an 'enhanced sentence' in the sense that the former regime provided." Id. According to Pedraza, based on the 2005 changes, the consideration of a material element of crime as an aggravator "is no longer an inappropriate double enhancement." Id. Thus, to the extent the trial court considered an element of the offense as an aggravator, it is no longer an improper double enhancement under the new sentencing scheme.

Regardless, the seriousness of the offense, "which implicitly includes the nature and circumstances of the crime as well as the manner in which the crime is committed, has long been held a valid aggravating factor." Anglemyer, 868 N.E.2d at 492. In its consideration of the circumstances of the offense as an aggravator, the trial court observed that "two strong, young, men" forced their way into her home and terrorized E.K. Tr. p. 61. It is clear from the totality of the sentencing statement that the trial court

---

[3] Although Gomillia relies on McElroy v. State, 865 N.E.2d 584, 590 (Ind. 2007), which was decided after the 2005 amendment to the sentencing statutes, McElroy committed the offenses in 2003, and there is no indication that he was sentenced pursuant to the 2005 amendments.

was focused on the intrusion into the sanctity of E.K.'s home. The trial court discussed at length the impact of a home invasion on victims generally and on E.K. in particular. Although the burglary charge was dismissed, the trial court properly considered the circumstances of the offense as an aggravator. See Bethea v. State, 983 N.E.2d 1134, 1145 (Ind. 2013) (holding that, where a plea agreement lacks language prohibiting the trial court from considering dismissed enhancements or the original charges from which a lesser plea is taken, "it is not necessary for a trial court to turn a blind eye to the facts of the incident that brought the defendant before them."). The record also establishes that Gomillia terrorized E.K. because, after Gomillia held a gun to her head and forced her to perform oral sex, he threatened to rape her. Gomillia has not established that the trial court abused its discretion in considering the "whole circumstance of this crime" or his lead role in it as aggravators. Tr. p. 61.

## Conclusion

Gomillia has not shown that the trial court abused its discretion in sentencing him. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.

8