

I N T H E

# Court of Appeals of Indiana

Daniel E. Baker,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Mar 13 2025, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 13, 2025

Court of Appeals Case No.
24A-CR-1311

Appeal from the Marion Superior Court

The Honorable William J. Nelson, Judge

The Honorable Mark F. Renner, Magistrate

Trial Court Cause No.
49D18-2304-F6-11989

**Opinion by Judge Kenworthy**

Judges Mathias and Brown concur.

**Kenworthy, Judge.**

## Case Summary

Following an altercation at his in-laws' home, Daniel Baker was charged with residential entry, attempted residential entry, battery against a public safety official, theft, resisting law enforcement, and criminal mischief. Before trial, the battery and theft counts were dismissed. A jury found Baker not guilty of residential entry but guilty of the remaining three counts: Level 6 felony attempted residential entry,[1] Class A misdemeanor resisting law enforcement,[2] and Class B misdemeanor criminal mischief.[3] The trial court entered judgment of conviction on those three counts, sentenced Baker to concurrent terms—suspended but for time served—on each count, and placed him on probation for 365 days. Baker raises two issues for review on appeal: (1) Do his convictions for attempted residential entry and criminal mischief violate the prohibition on double jeopardy? and (2) Do the sentencing order and Chronological Case Summary ("CCS") require correction? We reverse in part and remand.

---

[1] Ind. Code §§ 35-43-2-1.5 (2014); 35-41-5-1(a) (2014).

[2] I.C. § 35-44.1-3-1(a)(1) (2021). Baker does not challenge this conviction.

[3] I.C. § 35-43-1-2(a) (2022).

## Facts and Procedural History

[2] Baker and his estranged wife Michelle share three daughters. One evening in April 2023, Michelle left the girls in the care of her parents, Benjamin and Susan Sandlin. Baker arrived at the Sandlins' home to check on the children. Benjamin spoke to Baker through the closed front door, telling him he could not come in to see the children until Michelle got back. Baker threatened to kick the door in, and Susan called the police. Baker kicked the door, damaging the door and the door frame. Baker's foot crossed the threshold but Benjamin firmly pushed the door shut from inside so Baker could not get into the house. Benjamin told Baker they had called the police and Baker left. Sometime after this encounter, the Sandlins' doorbell camera went offline and disappeared. Police responded and took photos of the broken door.

[3] Within an hour, Baker returned. This time, he drove to the rear of the Sandlin house and spoke to the children in the carport. The Sandlins called the police again. When police arrived, they found Baker in the backyard and intended to arrest him for his earlier conduct. Baker told police "he wasn't going to go easy." *Tr. Vol. 2* at 127. Baker refused to place his hands behind his back as instructed and "pulled away multiple times" when police attempted to pull his arms behind his back. *Id.* at 128. When one officer did a leg sweep to take Baker to the ground, Baker pulled another officer to the ground with him.

[4] The State charged Baker with six counts: Count 1, residential entry; Count 2, attempted residential entry; Count 3, battery against a public safety official; Count 4, theft; Count 5, resisting law enforcement; and Count 6, criminal

mischief. Before trial, Counts 3 and 4 were dismissed on the State's motion. On the remaining counts, a jury found Baker not guilty of Count 1, residential entry; and guilty of Count 2, attempted residential entry; Count 5, resisting law enforcement; and Count 6, criminal mischief.

[5] The trial court sentenced Baker to 545 days for attempted residential entry; 365 days for resisting law enforcement; and 180 days for criminal mischief. For each count, Baker was given credit for eight days served and the balance of the sentence was suspended. The sentences were ordered to be served concurrently, and Baker was placed on probation for 365 days. As a condition of his probation, Baker was ordered to participate in alcohol evaluation and treatment. He was also ordered to pay restitution "for the criminal mischief and the damage done to the victim." *Id.* at 210.[4] The Sentencing Order states:

---

[4] The trial court also "put this proviso in that if [Baker] complete[s] alcohol evaluation and any recommended treatment and pays all of the assessments that have been imposed, he can terminate his probation earlier than the 365 days." *Id.*

The Defendant was charged with the following crimes, resulting in the following Dispositions under the above-referenced cause:

| PART I | CHARGES | | | |
|---|---|---|---|---|
| COUNT | CRIME | GOC | STATUTORY CITATION | DISPOSITION |
| II | 35-43-2-1.5/F6: Residential Entry break and enter dwelling | Attempt to Commit | 35-43-2-1.5 | Finding of Guilty |
| V | 35-44.1-3-1(a)(1)/MA: Resisting Law Enforcmnt: def. knowingly/intentionally forcibly resist/obstruct | | 35-44.1-3-1(a)(1) | Finding of Guilty |
| VI | 35-43-1-2(a)/MB:Criminal Mischief | | 35-43-1-2(a) | Finding of Guilty |

As a result of the above convictions, the Court has sentenced the defendant as follows:

| PART II | SENTENCE | | | | |
|---|---|---|---|---|---|
| COUNT | SENTENCE | SUSPENDED | CONCURRENT | CONSECUTIVE | WITH (COUNT OR CASE NUMBERS) |
| II | 0 Year(s) and 545 Day(s) | 0 Year(s) and 537 Day(s) | | | |
| V | 0 Year(s) and 365 Day(s) | 0 Year(s) and 357 Day(s) | X | | 2+6 |
| VI | 0 Year(s) and 180 Day(s) | 0 Year(s) and 172 Day(s) | X | | 2+5 |

| COUNT | CONFINEMENT TYPE | CONFINEMENT COMMENTS |
|---|---|---|
| II | County Jail | 365 probation |
| V | County Jail | |
| VI | County Jail | |

The Defendant is to serve this sentence at:  Marion County Jail

*Appellant's App. Vol. 2* at 17.  The record does not include an abstract of judgment or indicate the trial court prepared one.

## Baker's convictions of both attempted residential entry and criminal mischief violate Indiana's prohibition against substantive double jeopardy.

[6] Baker argues the trial court's entry of judgments of conviction for both residential entry and criminal mischief subjected him to substantive double jeopardy.  The State concedes both convictions cannot stand.  *See Appellee's Br.* at 9–10.

[7] Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding."  *A.W. v. State*, 229

N.E.3d 1060, 1066 (Ind. 2024).  We review claims of double jeopardy *de novo*. *Id.* at 1064.

[8] To determine whether a substantive double jeopardy violation has occurred when multiple convictions for a single act implicate two or more statutes, we apply a "three-part test based on statutory sources[.]"  *Id*. at 1066.  In Step 1, we look to the statutory language of the offenses at issue; if that language clearly permits multiple punishments, then there is no violation of substantive double jeopardy.  *Id.*  If the statutory language does not clearly permit multiple punishments, we move to Step 2 and look to the included-offense statute and the face of the charging information to assess whether the charges are inherently included or factually included as charged.  *Id*. at 1068.  When "'neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop."  *Id*. at 1067 (quoting *Wadle v. State*, 151 N.E.3d 227, 248 (Ind. 2020)).  But if one offense is included in the other or if ambiguities exist,[5] we proceed to Step 3 and examine the "underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'"  *Id*. at 1071 (quoting *Wadle*, 151 N.E.3d at 249).

---

[5] "[W]here ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor, and . . . find a presumptive double jeopardy violation" at this step. *Id.* at 1069 (internal citation omitted).  The State can rebut this presumption in the third step. *Id.*

[9] Based on the State's concession and our independent review of Baker's double jeopardy claim, we conclude Baker's convictions for both attempted residential entry and criminal mischief violate the prohibition against substantive double jeopardy. Neither the statute defining residential entry[6] nor the statute defining criminal mischief[7] clearly permits multiple punishments for the same act, so we move on to Step 2. On review of the criminal statutes, criminal mischief is not inherently included in attempted residential entry. But on review of the face of the charging instruments, whether criminal mischief is factually included in attempted residential entry as charged is at least ambiguous and constitutes a presumptive double jeopardy violation. The attempted residential entry charge alleges Baker attempted to break and enter the Sandlins' home by "kicking the door *and/or* damaging the door *and/or* damaging the door frame[.]" *Appellant's App. Vol. 2* at 23 (emphasis added). The criminal mischief charge alleges Baker damaged or defaced the Sandlins' door and/or door frame without the Sandlins' permission. *See id.* at 24. Both charges rely at least in part on the fact Baker's conduct damaged the door and door frame.

[10] And in Step 3, looking at the facts included in the charging information *and* adduced at trial, we conclude the evidence showed Baker's two offenses are the

---

[6] Residential entry is defined as knowingly or intentionally breaking and entering the dwelling of another person. *See* I.C. § 35-43-2-1.5. An attempt is made when a person, "acting with the culpability required for the commission of the crime, . . . engages in conduct that constitutes a substantial step toward commission of the crime." I.C. § 35-41-5-1(a).

[7] Criminal mischief is defined as recklessly, knowingly, or intentionally damaging or defacing property of another person without that person's consent. *See* I.C. § 35-43-1-2(a).

same. Baker damaged the door by kicking it in an attempt to gain entry to the house without the Sandlins' consent. His acts were so compressed in time, place, singleness of purpose, and continuity of action as to constitute a single transaction.

[11] The trial court's entry of judgments of conviction for both attempted residential entry and criminal mischief violates the prohibition against substantive double jeopardy. The remedy for the violation in this case is to remand for the trial court to vacate the criminal mischief conviction. *See Wadle*, 151 N.E.3d at 256 (remedying a double jeopardy violation by vacating the offense with the lesser penalty). As the trial court ordered concurrent sentences, Baker's aggregate sentence remains unchanged.

## On remand, the trial court should prepare an abstract of judgment and amend the sentencing order and CCS as needed to clearly and correctly reflect the judgment.

[12] Preliminarily, we note both the sentencing order and the CCS must be amended on remand to reflect the proper disposition of the criminal mischief conviction and appropriate resulting sentence as decided above. As for whether these documents must be amended further, the parties agree the requirements for the content of a CCS or sentencing order are questions of law subject to *de novo* review. *See Appellee's Br.* at 11; *Appellant's Reply Br.* at 5; *Russell v. State*, 234 N.E.3d 829, 857 (Ind. 2024), *cert. denied*.

[13]     Baker argues the sentencing order should act as "a single record . . . that addresses the disposition of all counts the State elected to charge," and correspondingly, there should be a "single CCS entry that addresse[s] all criminal counts." *Appellant's Reply Br.* at 4, 7. He offered no direct authority in his briefing to support his position.[8]

[14]     Indiana Code Section 35-38-1-1(a) requires the trial court to enter a judgment of conviction after a verdict, finding, or plea of guilty in a criminal case. The judgment of conviction must be entered at or before sentencing, Ind. Crim. R. 3.4, and must include certain information, including "*the crime for which the convicted person is adjudged guilty* and the classification of the criminal offense[,]" I.C. § 35-38-3-2(b)(1) (emphasis added). "After a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes unless the court imposes the advisory sentence for the felony." I.C. § 35-38-1-1.3 (2014). This serves two primary purposes: (1) to guard against arbitrary and capricious sentencing, and (2) to provide an adequate basis for appellate review. *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007); *see Casco-Canales v. State*, 243 N.E.3d 370, 373 (Ind. Ct. App. 2024) (noting a "clearly written sentencing order is critical to the understanding of defendants, the public, and all our partners in the criminal justice system" where a sentencing order was unclear as to whether the trial

---

[8] Baker filed a Notice of Additional Authority after this case was fully briefed citing a memorandum decision of this Court and referencing the cases cited therein.

court intended to impose a sixteen-year sentence with thirteen years executed in the DOC or a total sentence of thirteen years).

[15] It appears the sentencing order in Baker's case serves the purpose of both the judgment of conviction and the sentencing order, as there is no separate judgment of conviction in the record. Notwithstanding the language of the sentencing order template that "Defendant was charged with the following crimes,"[9] there is no statutory or other requirement for this dual-purpose order to include the information Baker claims is missing from his. The only requirements relevant to Baker's claim are that the order includes the crimes of which Baker was found guilty and clearly expresses the sentence imposed on those convictions. The order meets those requirements and need not be amended as Baker requests.[10]

[16] As for the CCS, Baker claims there should be a single CCS entry addressing all six counts with which he was charged. The CCS is the official record of a trial

---

[9] The Marion County sentencing order template and the Department of Correction abstract of judgment form bear resemblances—including this language—but they are not identical in form or in purpose. An abstract of judgment is not the judgment of conviction and is also distinct from a written sentencing order. *Robinson v. State*, 805 N.E.2d 783, 794 (Ind. 2004). The abstract is a "form issued by the Department of Correction and completed by trial judges for the convenience of the Department," *id*. at 792, whereas the judgment of conviction "meets the statutory criteria of Indiana Code section 35-38-3-2," *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007).

[10] In *Crane v. State*, 147 N.E.3d 424, 425 (Ind. Ct. App. 2020), we remanded for a sentencing order to be amended to include the disposition of all counts charged—including a count of which the defendant was found not guilty— because it would be the "better practice" for sentencing orders "to be complete and accurate with respect to the charges that were *tried* and the disposition of each, not just the charges that were reduced to a conviction." *Crane* was also a Marion County case that used the same sentencing order template as in this case. The statutory requirements were not addressed in *Crane*, and the State does not concede the sentencing order should be amended here.

court's actions. *Berry v. State*, 23 N.E.3d 854, 857 (Ind. Ct. App. 2015), *trans. denied*. Trial Rule 77(B) requires CCS entries promptly be made of all judicial events, setting forth the date of the event and briefly describing "any documents, orders, rulings, or judgments filed or entered in the case." There are CCS entries corresponding to the relevant judicial events in this case (dismissal of Counts 3 and 4; the jury verdicts, including the not guilty verdict on Count 1; and sentencing on Counts 2, 5, and 6) and they collectively show the disposition of all counts.

[17] Nonetheless, the parties agree there is an error in the CCS entry for sentencing that requires a corrected entry. They premise their arguments on the CCS in the Appellant's Appendix. But the CCS in the Appellant's Appendix (apparently obtained through the Public Defender Information System) and the CCS in the trial court cause number in Odyssey are not the same.[11] The entry for the sentencing in the CCS contained in the Appendix shows three convictions but only one sentence—the sentence for criminal mischief. The entry in the CCS maintained in Odyssey reflects three convictions and three sentences but does not identify which sentence was imposed for which

---

[11] Indiana Appellate Rule 50(A) describes the documents that comprise the Appellant's Appendix and explains the purpose of the Appendix is to "present the Court with copies of only those parts of the Record on Appeal that are necessary for the Court to decide the issues presented." The Record on Appeal consists of the Clerk's Record and all proceedings before the trial court. Ind. Appellate Rule 2(L). And the Clerk's Record is "the Record maintained by the clerk of the trial court," including the CCS. App. R. 2(E). In other words, the CCS maintained by the trial court clerk is the official court record. We acknowledge parties sometimes obtain the CCS from other means (for instance, from the Public Defender Information System as in this case, or from mycase.IN.gov), but caution those who do so to ensure the copy they use accurately reflects the official court record.

conviction. We cannot explain the discrepancy, but we direct the trial court on remand to ensure there is a CCS entry in the official record that clearly shows the sentence imposed for each count of which Baker was convicted.

[18] We note, as Baker does, that no abstract of judgment appears in the record of this case.[12] Criminal Rule 5.2 states, "Upon sentencing a person for any felony conviction, the court must complete an abstract of judgment in an electronic format approved by the Indiana Office of Judicial Administration (IOJA)." A properly prepared abstract would include in a single document all the information Baker claims should be in his sentencing order. *See* Ind. Trial Court Admin. Manual for Judges & Clerks, Electronic Abstract of Judgment at 3, https://www.in.gov/courts/iocs/files/pubs-trial-court-electronic-abstract-of-judgment.pdf [https://perma.cc/SKV3-WUXE] (last visited Mar. 3, 2025) (noting for Part I of the abstract of judgment, "*Each charge must receive a disposition*, even if the offender was found not guilty or if the count was dismissed" and for Part II, "Completion of the Sentencing section of the Abstract of Judgment is required for all counts for which the offender was convicted.") (emphasis added). On remand, we direct the trial court to prepare an abstract as required by Criminal Rule 5.2.

---

[12] Baker does not claim this is error, but much of Baker's reply brief argument about the sentencing order issue is directed to the requirements of an abstract of judgment, and he notes he "simply asks for the trial court to issue a single record . . . that addresses the disposition of all counts the State elected to charge." *Appellant's Reply Br.* at 7.

## Conclusion

Baker's conviction of criminal mischief must be vacated as it violates our prohibition on substantive double jeopardy. On remand, we instruct the trial court to prepare an abstract of judgment and ensure the sentencing order, CCS, and abstract all clearly reflect the court's judgment as amended in accordance with this opinion.

Reversed and remanded.

Mathias, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Peter Laramore
Marion County Public Defender Agency, Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana