**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 24 2014, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTONIO MCCASTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1311-CR-544 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1302-FA-2

**June 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

Antonio McCaster appeals from his conviction of one count of dealing in cocaine[1] as a Class A felony,[2] and his habitual offender determination, contending that there was insufficient evidence to support his conviction for dealing in cocaine, and that there was insufficient evidence to support the trial court's finding that he was an habitual offender. Consistent with our standard of review, however, we affirm McCaster's conviction and habitual offender determination.

FACTS AND PROCEDURAL HISTORY

Lafayette Police Department Detective Jason Walters, who was also assigned to the Tippecanoe County Drug Task Force, received information that a person, who could be reached at cell phone number 312-771-1487,[3] might be selling cocaine. Walters contacted the person using that cell phone number and arranged to meet him at Bar Barry Liquor Store located at 1601 Main Street, Lafayette, Indiana. That location, which was selected by the suspect, was within 1000 feet of several family housing complexes and a public park. The two agreed that Walters would purchase $100 worth of cocaine.

Lafayette Police Department Detective Natalie Lovett, who was also assigned to the Tippecanoe County Drug Task Force, conducted surveillance of the controlled buy, and Lafayette Police Department Officer Michael Barthelemy and Lafayette Police Department

---

[1] Ind. Code § 35-48-4-1(b)(3)(B)(iii) (2006).

[2] The jury also found McCaster guilty of possession of cocaine as a Class B felony, but no judgment was entered on that verdict.

[3] The telephone number was registered to an individual named Amanda Burton. Detective Walters did not know if Burton had ever been asked why a telephone registered to her would be used in drug transactions.

Detective Jared Sowders were assigned to the area as part of the rapid action team, whose function was to help the undercover officer as needed. Prior to the controlled buy, the buy money was photographed, and Walters was fitted with a body wire to allow the audio portion of the transaction to be heard by other members of the team.

After the surveillance team members took their places, Walters went to the location of the controlled buy. Shortly after arriving there, Walters and Lovett observed two black males walking toward Walters' car. McCaster was wearing a black or dark tee shirt and jean shorts, wore his hair in corn rows, and had tattoos down his left arm. The other individual was wearing a white tee shirt and shorts. The controlled buy took place after 9:00 p.m., and although it was twilight, Walters had a clear view of McCaster. McCaster opened the passenger door of Walters' vehicle, sat down, and spit two small baggies into his hand. He gave them to Walters, who then gave McCaster $100.

McCaster left Walters' vehicle and headed toward the side of Bar Barry Liquor Store. Walters told the other officers that McCaster had exited his vehicle and passed along a brief description of McCaster. Lovett videotaped both the transaction and McCaster walking away from Walters' vehicle. After hearing that McCaster had exited Walters' vehicle, Sowders observed a black male coming around the corner of Bar Barry Liquor Store. Barthelemy also saw McCaster, whom he recognized, along with the individual wearing the white tee shirt coming around the corner seconds after hearing Walters indicate that the controlled buy was completed.

Barthelemy was familiar with McCaster and McCaster's family from patrolling the city for over eight years. Barthelemy had met them numerous times and was aware that

3

McCaster lived near 14th and Alabama Street, a location in the same area as the controlled buy. Barthelemy notified the other detectives that he had identified the suspect as McCaster. After viewing the video recording made by Lovett, Barthelemy recognized McCaster as the person who had entered and exited Walters' vehicle.

McCaster was not arrested immediately after the controlled buy because the officers hoped to identify others working with him. Walters left the scene, field tested the substance McCaster had sold to him, and determined that it was cocaine. Walters viewed a photograph of McCaster later that evening and recognized him as the person from whom he had purchased the cocaine. Subsequent lab tests verified that the substance in one of the baggies, weighing .23 grams, was cocaine.

The State charged McCaster with one count of dealing in cocaine as a Class A felony, one count of possession of cocaine as a Class B felony, and two separate informations alleging in one that McCaster was an habitual substance offender and that he was an habitual offender in the other.

At the conclusion of McCaster's jury trial, he was found guilty of both dealing in cocaine and possession of cocaine. McCaster waived his right to a jury trial on the habitual offender phase of his trial. During that phase of the trial, the State presented evidence that McCaster had a conviction for delivery of a controlled substance in cause number 97CR0500901, armed robbery in cause number 97CR1651201, and possession of a controlled substance in cause number 00CR0855601. Each of those convictions were from

the State of Illinois.[4]  The trial court found that McCaster had been convicted under those cause numbers and determined that McCaster was an habitual offender.  McCaster now appeals.

## I.

McCaster claims that the evidence is insufficient to sustain his conviction for dealing in cocaine.

> Our standard of review with regard to sufficiency claims is well settled.  In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses.  We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment.  A conviction may be based upon circumstantial evidence alone.  Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense.

*Lainhart v. State*, 916 N.E.2d 924, 939 (Ind. Ct. App. 2009) (internal citations omitted).

In order to establish that McCaster had committed dealing in cocaine, the State was required to prove beyond a reasonable doubt that McCaster knowingly or intentionally delivered cocaine to another person within 1000 feet of a family housing complex.  Ind. Code § 35-48-4-1(b)(3)(B)(iii) (2006).  The evidence most favorable to the jury's verdict reveals that Walters met McCaster at a previously determined location, which was within 1000 feet of a family housing complex, and which was chosen by McCaster.  McCaster entered Walters' vehicle, gave him baggies of cocaine, received $100 from Walters, and

---

[4] Without objection from McCaster, fingerprints taken from McCaster at the Tippecanoe County Jail were compared with the fingerprint cards from the prior Illinois arrests leading to the convictions.  McCaster was charged in that name and under the name Demetrius Evans.  An Indiana State Police fingerprint analyst confirmed that the fingerprints from all four fingerprint cards were McCaster's.

then left. Walters told the other detectives that the controlled buy had concluded, that McCaster was out of his vehicle, and gave them a brief description of the suspect. McCaster walked toward the side of Bar Barry Liquor. Lovett recorded both the transaction and McCaster walking away from Walters' vehicle.

After hearing that the transaction had concluded, Sowders saw a black male coming around the corner of Bar Barry Liquor. Barthelemy also observed McCaster, whom he recognized, along with the individual wearing the white tee shirt coming around the corner seconds after hearing that the transaction was completed. Barthelemy was familiar with McCaster and his family and knew that he lived near the location of the controlled buy. Barthelemy passed along his identification of McCaster as the suspect. Barthelemy confirmed that identification after viewing the video tape recorded by Lovett. Walters, who had a clear view of McCaster, viewed a photograph of McCaster later that evening and immediately recognized McCaster as the person who sold the cocaine to him.

Walters' field testing of the substance contained in one of the baggies he had purchased from McCaster produced a positive result for cocaine. Subsequent testing of the substance in the baggies revealed that one of the baggies, weighing .23 grams, contained cocaine.

McCaster's main contention with respect to the sufficiency of the evidence is that the State failed to establish his identity as the person who sold the cocaine to Walters. McCaster argues that the State should have considered surveillance video from the liquor store, or should have contacted the owner of the cell phone used to arrange the transaction. McCaster claims that he could not be identified in the video tape recorded by Lovett, and

6

that the officers' identification of him is deficient because it was almost dark at the time of the transaction. Many of these claims, however, are an invitation to reweigh the evidence, a task we are forbidden to undertake given our standard of review. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Resolution of the other claims—failure to review the liquor store surveillance tape and failure to contact Burton, the owner of the cell phone—is not necessary to our review of whether the State proved its case against McCaster. Sufficient evidence supports McCaster's conviction.

## II.

McCaster also asserts that there is insufficient evidence to support the determination of his status as an habitual offender. Although framed as a question involving the sufficiency of the evidence, McCaster does not challenge the State's proof. Instead, McCaster claims that our Supreme Court incorrectly interpreted Indiana Code section 35-50-2-8 (2005) in its decision in *Peoples v. State*, 929 N.E.2d 750 (Ind. 2010),[5] and that the statute is inapplicable to him.

As an initial matter, we observe that McCaster did not raise this issue at trial. "It is well settled that Indiana's appellate courts look with disfavor upon issues that are raised by a party for the first time on appeal or in original actions without first raising the issue at first opportunity in the trial court." *Craig v. State*, 883 N.E.2d 218, 220 (Ind. Ct. App. 2008) (quoting *Byrd v. State*, 592 N.E.2d 690, 691 (Ind. 1992)).

---

[5] Our Supreme Court held that a defendant's current conviction for dealing in cocaine in the first phase of that defendant's trial could also be counted under the habitual offender statute for use in the habitual offender phase of that defendant's trial. *Peoples*, 929 N.E.2d at 754.

Additionally, the failure to challenge an allegedly defective charging information by way of a motion to dismiss before trial results in waiver of the issue on appeal. *Lampitok v. State*, 817 N.E.2d 630, 636 (Ind. Ct. App. 2004) (citing *Buzzard v. State*, 712 N.E.2d 547, 551 (Ind. Ct. App. 1999)). The State filed both an habitual substance offender information and an habitual offender information against McCaster. Therefore, he was aware of the State's intention to establish his status as either an habitual substance offender or an habitual offender by way of his prior convictions in Illinois. Because McCaster failed to file a motion to dismiss prior to trial, his contention is arguably waived under this reasoning as well.

Further, to the extent that McCaster seeks to have this court overrule the binding precedent of our Supreme Court, we will not entertain this notion. As we have previously stated,

> We are bound by the decisions of our [S]upreme [C]ourt. Supreme [C]ourt precedent is binding upon us until it is changed either by that court or by legislative enactment. While Indiana Appellate Rule 65(A) authorizes this [c]ourt to criticize existing law, it is not this court's role to "reconsider" [S]upreme [C]ourt decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002) (internal citations omitted).

Waiver notwithstanding, under the reasoning of our Supreme Court's opinion in *Peoples*, we conclude that there was sufficient evidence to support the trial court's determination of McCaster's status as an habitual offender. Indiana Code section 35-50-2-8 provides in pertinent part as follows:

> (a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page

separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

. . . .

(3) all of the following apply:

(A) The offense is an offense under IC 16-42-19 or IC 35-48-4.
(B) The offense is not listed in section 2(b)(4) of this chapter.
(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16-42-19-27;
(ii) dealing in cocaine or a narcotic drug (IC 35-48-4-1);
(iii) dealing in a schedule I, II, III controlled substance (IC 35-48-4-2);
(iv) dealing in a schedule IV controlled substance (IC 35-48-4-3); and
(v) dealing in a schedule V controlled substance (IC 35-48-4-4);

does not exceed one (1).

The State alleged that McCaster was an habitual offender and an habitual substance offender based upon three prior felony convictions:  1) delivery of a controlled substance in 1997; 2) armed robbery in 1997; and 3) possession of a controlled substance in 2000. McCaster's present conviction is for dealing in cocaine as a Class A felony under Indiana Code chapter 35-48-4.  Applying the reasoning announced in *Peoples* to McCaster's case, the present drug conviction coupled with McCaster's 1997 Illinois drug conviction does not prohibit a finding of habitual offender status.

9

With respect to the evidence supporting the habitual offender determination, we conclude that sufficient evidence was presented at that phase of the trial. Without objection, the State introduced certified and authenticated records establishing that McCaster was the individual who committed each of the qualifying offenses. Because McCaster's Illinois convictions were entered under two different names, again, without objection, the State introduced evidence from an Indiana State Police fingerprint analyst who established that the fingerprints from each of the convictions in Illinois matched fingerprints taken from McCaster at the Tippecanoe County Jail. A defendant's identification can be independently established by the use of fingerprint evidence. *Straub v. State*, 567 N.E.2d 87, 93 (Ind. 1991). We find no error here.

<u>CONCLUSION</u>

In light of the foregoing, we affirm the trial court.

BAKER, J., and BRADFORD, J., concur.