## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2017, 10:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sidney D. Greenleaf, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | April 27, 2017 <br><br> Court of Appeals Case No. 79A02-1511-CR-1862 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Thomas H. Busch, Judge <br><br> Trial Court Cause No. 79C01-1502-F1-01 |

**Brown, Judge.**

[1] Sidney Greenleaf appeals his sentence for attempted murder. Greenleaf raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] On February 2, 2015, Greenleaf shot at Aaron Vance multiple times outside of a gas station. Vance was struck twice in the left forearm, twice in the left buttock, both feet, and his scrotum, causing Vance to lose a testicle. Police found five or six shell casings. Law enforcement eventually located Greenleaf, and he was detained and brought to Indiana in mid- to late-March.

[3] On February 6, 2015, the State charged Greenleaf with: Count I, attempted murder as a level 1 felony; Count II, aggravated battery as a level 3 felony; Count III, battery as a level 5 felony; Count IV, battery as a level 5 felony; Count V, carrying a handgun without a license as a class A misdemeanor; and Count VI, carrying a handgun by a convicted felon as a level 5 felony. The State also alleged a sentencing enhancement for the unlawful use of a firearm in the commission of a felony that resulted in death or serious bodily injury as Count VII.

[4] On August 17, 2015, Greenleaf and the State entered a plea agreement pursuant to which Greenleaf agreed to plead guilty to Count I, attempted murder as a

level 1 felony, and Count VII, unlawful use of a firearm as a sentencing enhancement, and the State agreed to dismiss the remaining counts.

[5] On October 9, 2015, the court held a sentencing hearing. Lafayette Police Detective Patrick Dempster testified that surveillance video appeared to show that Vance was shot while he was facing Greenleaf, while he was turned around walking away from Greenleaf, and while he was on the ground. When asked how Vance was doing in his recovery at the time he met with him a couple of weeks after the offense, Detective Dempster stated: "It's slow and the feet are— he was having problems walking. Used a cane or was told to use a cane." Transcript II at 22. Detective Jennifer Keifer testified that she interviewed Greenleaf and he was not initially forthcoming, but at some point admitted to shooting Vance. Detective Keifer also testified that Greenleaf said that he had taken the gun to his house and called somebody to retrieve the gun after someone called Greenleaf and notified him that the police were looking for him. Greenleaf stated: "I just want to say sorry for what I did." *Id.* at 28. The probation officer completing the presentence investigation report ("PSI") recommended that the court sentence Greenleaf to thirty-five years for attempted murder enhanced by ten years.

[6] The court found the following aggravating factors: the harm, injury, loss, or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense, Greenleaf's history of criminal or delinquent behavior, and Greenleaf had recently violated a condition of probation and attempted to avoid detection. The court found his

guilty plea, acceptance of responsibility, mental illness, and difficult childhood to be mitigating factors. With respect to his guilty plea, the court stated: "The defendant did plead guilty and take responsibility and as far as I can tell there was minimum if any benefit to doing that so that is a certainly a mitigating factor . . . ." *Id.* at 39. The court found that the aggravating factors outweighed the mitigating factors and sentenced Greenleaf to the Department of Correction for thirty-five years for attempted murder, enhanced by ten years for an aggregate sentence of forty-five years.

## *Discussion*

### I.

[7] The first issue is whether the trial court abused its discretion in sentencing. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say

with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[8] Greenleaf argues that the court abused its discretion by considering a material element of his offense as an aggravating circumstance. Specifically, he asserts that "serious bodily injury" is a material element of the sentencing enhancement and points to the court's statement that "the harm, injury, loss, or damage suffered by the victim of an offense was significant and greater than the elements necessary to prove the commission of the offense . . . ." Appellant's Appendix II at 40. The State argues that the trial court was not prohibited from considering the significant injuries the victim suffered as an aggravating circumstance and that even if the court erred, the remaining aggravating circumstances were sufficient on their own to support his sentence.

[9] A material element of a crime may not be used as an aggravating factor to support an enhanced sentence. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). However, when evaluating the nature of the offense, the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors. *Id. See also* Ind. Code § 35-38-1-7.1 ("In determining what sentence to impose for a crime, the court may consider the following aggravating circumstances . . . the harm, injury, loss, or damage suffered by the

victim of an offense was . . . significant; and . . . greater than the elements necessary to prove the commission of the offense.").

[10] At the sentencing hearing, the court stated:

> The—it's a wonder based upon the facts as presented and the injuries that the defendant received—excuse me that the victim received that he isn't dead. And it looks like the injuries inflicted were intended to inflict suffering and not only to cause death. And the extent of the injuries, well this is an interesting question. Because the injuries were certainly more severe than the elements necessary to prove the commission of the attempted murder. You can shoot and miss and cause attempted murder. The serious injury is the element—is part of the gun element which is an aggravator but that's not I don't think intended by the legislature to be the only way in which the extent of the injury can be considered in the—in considering the appropriate sentence so I will find that the harm, injury, loss and damage, suffering from the victim was significant and greater than the elements necessary to prove the commission of the offense, that's an aggravating factor.

Transcript II at 37-38.

[11] We conclude that the court considered the injuries not as material elements of the crime or sentencing enhancement but as the nature and circumstances of the offense. Consequently, we cannot say that the trial court abused its discretion. *See Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011) (holding that the trial court did not abuse its discretion by considering the nature and circumstances of the offense as an aggravator under Ind. Code § 35-38-1-7.1 where the victim was shot seven times), *trans. denied*; *Settles v. State*, 791 N.E.2d

812, 814-815 (Ind. Ct. App. 2003) (holding that facts evidencing the particular brutality of an attack may be considered as an aggravating circumstance when sentencing a defendant for aggravated battery and concluding that the trial court did not improperly consider the severity of the victim's injuries as an aggravator).

## II.

[12] The next issue is whether Greenleaf's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[13] Greenleaf argues that his actions and the injuries sustained by Vance are not more egregious than the typical offense envisioned by the legislature when it set an advisory sentence for such conduct. He asserts that he pled guilty without the benefit of a plea agreement, took responsibility for his actions, cooperated with law enforcement and admitted to shooting Vance when confronted by law enforcement, endured a very difficult childhood, suffers from a learning disability, and was only twenty-five years old when he committed the offense. He also notes that all four of his previous felony convictions are non-violent offenses of criminal trespass.

[14] Ind. Code § 35-50-2-4 provides that a person who commits a level 1 felony shall be imprisoned for a fixed term of between twenty and forty years with the advisory sentence being thirty years. At the time of the offense, Ind. Code § 35-50-2-11, which governs the sentence enhancement, provided "[i]f . . . the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense, the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years."[1]

[15] Our review of the nature of the offense reveals that Greenleaf, who was born in 1989, shot at Vance multiple times on February 2, 2015, and some of the shots occurred while Vance was turned around walking away from Greenleaf and while Vance was on the ground. Vance was struck twice in the left forearm, twice in the left buttock, both feet, and his scrotum. Vance lost a testicle. When asked what role drugs or alcohol played in the offense, Greenleaf stated: "I had been smoking weed and was drunk when it happened." Appellant's Appendix II at 66.

[16] Our review of the character of the offender reveals that Greenleaf went to Chicago after the offense and told somebody to retrieve the gun after he was notified that police were looking for him. Law enforcement eventually located

---

[1] Subsequently amended by Pub. L. No. 238-2015, § 18 (eff. July 1, 2015); Pub. L. No. 157-2016, § 1 (eff. July 1, 2016).

him, he was detained and brought to Indiana in mid- to late-March, and he was not initially forthcoming, but at some point admitted to shooting Vance. He pled guilty, and the State dismissed the other charges. At the sentencing hearing, Greenleaf stated: "I just want to say sorry for what I did." Transcript II at 28.

[17] Greenleaf reported that he was raised by his mother and experienced problems during his childhood relating to his mother's substance abuse problems. Two of Greenleaf's three children were found to be children in need of services ("CHINS") in 2009 due to Greenleaf and the children's mother using marijuana in the home with the children present. He reported being ordered to pay $256 per month in child support for two of his children and that he is approximately $20,000 in arrears, and that he was diagnosed with a learning disability in the third grade.

[18] He reported consuming a bottle of cognac per day between the ages of thirteen and fourteen, two bottles of cognac per day between the ages of fifteen and eighteen, and a bottle of cognac per day between the ages of eighteen and nineteen and between ages twenty-one and twenty-five. He reported using marijuana every day between the ages of twelve and nineteen and between the ages of twenty-one and twenty-five, synthetic marijuana every other day between the ages of twenty-four and twenty-five, "sherms/Wet/Wikki Stix" every three days between the ages of twenty-one and twenty-three, cocaine once when he was eighteen, ecstasy every day between the ages of nineteen and twenty-five, and Vicodin four times when he was twenty-five. Appellant's

Appendix II at 66. He received substance abuse treatment in 2003 and 2010, but failed to participate in substance abuse treatment as ordered in the CHINS case in 2010.

[19] As a juvenile, Greenleaf was adjudicated a delinquent for possession of a stolen motor vehicle in 2003, and his probation was terminated unsatisfactorily. He was alleged to have committed possession of a stolen motor vehicle, criminal trespass to a vehicle, and aggravated battery on a school employee in 2003, but these cases were dismissed. In 2004, he was adjudicated a delinquent for battery and his probation was terminated unsatisfactorily. That same year, he was alleged to have committed battery and possession of cannabis, but these cases were dismissed. In March 2007, a disposition was entered following allegations that he committed criminal mischief, battery, and criminal trespass, and the narrative in the PSI states that the case was transferred to Cook, County, Illinois, that he was ordered not to return to Tippecanoe County, that he was arrested again in Tippecanoe County in July, and that all charges were filed under cause number 79D03-0707-JD-370 ("Cause No. 370"). Under Cause No. 370, he was alleged to have committed possession of marijuana as a class A misdemeanor, delinquency alcohol violation, criminal trespass as a class A misdemeanor, battery resulting in bodily injury as a class A misdemeanor, criminal mischief as a class B misdemeanor, disorderly conduct as a class A misdemeanor, and false informing as a class B misdemeanor. He was waived from juvenile jurisdiction and convicted of battery resulting in bodily injury as a class A misdemeanor.

[20] As an adult, he was convicted of operating a motor vehicle without ever receiving a license in 2008, and his probation in that case was revoked in 2009. Meanwhile, in 2008, he was convicted of resisting law enforcement as a class A misdemeanor. He was also charged with false informing and two counts of criminal trespass in 2008, but these cases were dismissed pursuant to a plea agreement in another cause. That same year, he was convicted of criminal trespass as a class A misdemeanor. In July 2009, he was convicted of operating a motor vehicle without ever receiving a license, criminal trespass, and false informing. In October 2009, he was convicted of criminal trespass as a class D felony. That same month, he was also charged with "Possession of Knife w/ Blade That Opens Automatically/May be Propelled," and the case was dismissed. *Id.* at 60.

[21] In May 2010, he was convicted of criminal trespass as a class D felony and false informing as a class A misdemeanor. In October 2010, he was convicted of operating a vehicle with a schedule I or II controlled substance or its metabolite as a class C misdemeanor, and he was later unsatisfactorily discharged from probation.

[22] In May 2012, he was convicted of battery resulting in bodily injury as a class A misdemeanor. In November 2012, he was convicted of criminal trespass as a class D felony. In September 2013, he was convicted of criminal trespass as a class D felony and resisting law enforcement as a class A misdemeanor. In October 2013, he was convicted of operating a motor vehicle without ever receiving a license as a class C misdemeanor. With respect to his criminal

history, the trial court stated: "it's as long and as intense history as one could have without having prior murder convictions and there is a repeated assaults causing injury and batteries, causing injury throughout the—I should say batteries causing injury throughout the defendant's criminal record." Transcript II at 38.

[23] The PSI indicates that Greenleaf has failed to appear for hearings over twenty times and that he has had fourteen petitions to revoke probation filed against him with two having been found true. The PSI also states that he was on unsupervised probation at the time of the instant offense, he reported having a past gang affiliation as a juvenile, and his overall risk assessment score places him in the very high risk category to reoffend.

[24] After due consideration, we conclude that Greenleaf has not sustained his burden of establishing that his sentence of forty-five years is inappropriate in light of the nature of the offense and his character.

## Conclusion

[25] For the foregoing reasons, we affirm Greenleaf's sentence.

[26] Affirmed.

May, J., and Pyle, J., concur.